No. 24-1796

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

DOMETIC CORP., DOMETIC SWEDEN AB,
*Appellants,*
v.
INTERNATIONAL TRADE COMMISSION,
*Appellee,*

CITIMARINE, L.L.C., MABRU POWER SYSTEMS, INC.,
SHANGHAI HOPEWELL INDUSTRIAL CO. LTD.,
SHANGHAI HEHE INDUSTRIAL CO. LTD.,
*Intervenors,*

**Appeal from the United States International Trade Commission**
**Investigation No. 337-TA-1346**

# INTERVENORS' BRIEF IN OPPOSITION TO APPELLANTS' OPENING BRIEF


Paul M. Bartkowski
Thomas R. Burns, Jr.
BARTKOWSKI PLLC
6803 Whittier Ave., Suite 200A
McLean, VA 22101
(571) 533-3581
pbartkowski@bartkowskipllc.com
tburns@bartkowskipllc.com

*Counsel for Citimarine, L.L.C.; Mabru Power Systems, Inc.; Shanghai Hopewell Industrial Co., Ltd.; and Shanghai Hehe Industrial Co., Ltd.*

Mark D. Bowen
MALIN HALEY DIMAGGIO & BOWEN, PA
4901 NW 17th Way, Suite 308
Fort Lauderdale, FL 33309
(954) 763-3303
mdb@mhdpatents.com

*Counsel for Mabru Power Systems, Inc.*

Jason Xu
RIMON, P.C.
1990 K Street NW, Suite 420
Washington, D.C. 20006
(202) 470-2141
jason.xu@rimonlaw.com

*Counsel for Shanghai Hopewell Industrial Co., Ltd. and Shanghai Hehe Industrial Co., Ltd.*

## U.S. PATENT NO. 8,056,351 (Appx296-333)

### Claim 1

1. An air conditioning device for a nautical vehicle including:

a main body; and

a blower including an inlet and an outlet, the inlet being in air communication with the main body, the blower further including blades rotating therewithin about a first axis, and

an assembly for adjusting the blower with respect to the main body about a second axis so as to alter an orientation of the outlet, the assembly including a guiding cover and a cylindrical duct element for maintaining the main body and the blower in air communication with one another, the duct element having a first base and a second base, and coupled to the blower at the second base, the first base of the duct element dimensioned to correspondingly fit the guiding cover, and the duct element being rotatably adjustable around the guiding cover about the second axis at the first base so as to alter the orientation of the outlet.

### Claim 18

18. An air conditioning device for a nautical vehicle including:

a main body; and

a blower including an inlet and an outlet, the inlet being in air communication with the main body, the blower being rotatable about first axis so that the outlet can be oriented toward a first direction and a second direction, and the first and second directions point to substantially different lateral sides of the main body, and

an assembly for adjusting the blower with respect to the main body about a second axis so as to alter an orientation of the outlet, the assembly including a guiding cover and a cylindrical duct element for maintaining the main body and the blower in air communication with one another, the duct element having a first base and a second base, and coupled to the blower at the second base, the first base of the duct element dimensioned to correspondingly fit the guiding cover, and the duct element being rotatbly[sic] adjustable around the guiding cover about the second axis at the first base so as to alter the orientation of the outlet.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1796

**Short Case Caption** Dometic Corp. v. ITC

**Filing Party/Entity** Intervenors Citimarine L.L.C., Mabru Power Systems, Inc., Shanghai Hopewell Industrial Co., Ltd., and Shanghai Hehe Industrial Co., Ltd.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/07/2025

Signature: /s/ Paul M. Bartkowski

Name: Paul M. Bartkowski

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Citimarine L.L.C. | | Citimarine Group LLC |
| Mabru Power Systems, Inc. | | NA |
| Shanghai Hopewell Industrial Co., Ltd. | | NA |
| Shanghai Hehe Industrial Co., Ltd. | | NA |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| Paul M. Bartkowski | Mark D. Bowen | Jason Xu |
| Thomas R. Burns, Jr. | | |
| Bartkowski PLLC | Malin Haley DiMaggio & Bowen, PA | Rimon, P.C. |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**4.Legal Representatives [CONTINUED].** List all law firms, partners, and associates that (a)appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

| | | |
|---|---|---|
| Emi Ito Ortiz | Dale P. DiMaggio | Zhun Lu |
| Bartkowski PLLC | Malin Haley DiMaggio & Bowen, PA | Rimon, P.C. |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ........................................................................1

I. INTRODUCTION ............................................................................................2

II. STATEMENT OF THE ISSUES ......................................................................3

III. STATEMENT OF THE CASE .........................................................................5

A. Dometic Did Not Disclose the Prior Art Vector Compact Product to the Patent Office During Prosecution ..................................5

B. Dometic Inaccurately Describes the ’351 Patent’s Disclosure Regarding the “Main Body” and the Claimed Axes ..............................................................................................7

C. Counter-Statement Regarding Procedural History and Relevant Decisions Below ....................................................................10

1. Dometic Successfully Opposed a Construction of the “Assembly” that Would Cover the Disclosed Embodiments and Equivalents Thereof ...................................10

2. Dometic Failed to Contend that the Vector Compact Lacks a Guiding Cover During Discovery ..........................................................................11

3. The ALJ and Commission Concluded that the Vector Compact Has a Guiding Cover Under Dometic’s Proposed Construction ............................................14

4. The ALJ Flagged a Claim Construction Issue Relating to the Axis Limitations in Order No. 20 ....................16

5. The ALJ and Commission Determined that Dometic Failed to Prove Rotation of the Blower About a First Axis as Required by Claims 18-22 .....................17

6. The ALJ and Commission Found Dometic’s Product’s “Asymmetric Truncated Cone”-Shape Duct Element to be “Cylindrical” ...........................................25

D. Dometic’s Request for Relief Mis-States the Procedural Posture of the Investigation...............................................................26

IV. SUMMARY OF ARGUMENT ........................................................ 27

V. STANDARD OF REVIEW ........................................................ 30

VI. ARGUMENT ........................................................ 31

A. The Commission Correctly Found that the Vector Compact Has a Guiding Cover ........................................................ 31

1. The Commission Found that the Vector Compact Had a Guiding Cover Under Dometic's Proposed Construction ........................................................ 31

2. Dometic's Arguments that the Commission Erred Because the Guiding Cover Cannot Be Part of the "Main Body" Fail ........................................................ 34

3. Dometic Fails to Identify Any Disputed Fact Regarding the Vector Compact's Identified Guiding Cover ........................................................ 39

B. The Commission Correctly Determined that Claims 18-22 Require Two Distinct Types of Rotation About Two Distinct Axes. ........................................................ 41

1. The Claim Language Supports the Commission's Construction ........................................................ 41

2. The Prosecution History Supports the Commission's Construction ........................................................ 44

3. The Specification Supports the Commission's Construction ........................................................ 46

4. Inventor Testimony Supports the Commission's Construction ........................................................ 48

5. Dometic's Construction Would Result in the Claims Being Invalid Over Dometic's Own Prior Products ........................................................ 50

6. Dometic's Arguments Fail to Demonstrate Any Error by the Commission or ALJ ........................................................ 52

C. The Domestic Industry Product's Blower Does Not Rotate About the Identified First Axis When the Duct Element Rotates Around the Guiding Cover ........................................................ 54

D. If Two Distinct Types of Rotation Are Not Required, the Claimed Axes Cannot Be Spatially Identical......................................55

E. Reversal of the Commission's Factual Finding that Dometic's Products' Duct Element Is "Cylindrical" Provides an Alternative Basis for Affirmance ....................................57

VII. CONCLUSION..........................................................................................58

# TABLE OF AUTHORITIES

## Cases

*Becton, Dickinson & Co. v. Tyco Healthcare Gr., LP*,
616 F.3d 1249 (Fed. Cir. 2010) .......... 43

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006) .......... 53

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) .......... 35, 37, 38, 43

*Rhine v. Casio, Inc.*,
183 F.3d 1342 (Fed. Cir. 1999) .......... 51

*Wasica Finance GMBH v. Continental Auto. Sys. Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) .......... 56

## Statutes

35 U.S.C. § 112(f) .......... 10

## Rules

19 U.S.C. § 1337(c) .......... 5

Fed. Cir. Rule 28(b) .......... 5

## STATEMENT OF RELATED CASES

No other appeal from the same underlying proceeding at the United States International Trade Commission has been before this or any other appellate court. Counsel is not aware of any other case that will directly affect or be directly affected by this appeal.

## I. INTRODUCTION

Intervenors and prevailing Respondents in the underlying Commission investigation, Citimarine L.L.C., Mabru Power Systems, Inc., Shanghai Hopewell Industrial Co., Ltd., and Shanghai Hehe Industrial Co., Ltd., (referred to collectively as “Intervenors” or “Respondents” herein), hereby respond to Appellant Dometic’s Opening Brief.

As demonstrated herein and in the Commission’s Responsive Brief, Dometic’s Brief fails to demonstrate any error in the Commission’s appealed findings that (1) claims 1, 2, 4, 5, and 7 of the asserted ’538 patent are invalid as anticipated by Dometic’s prior art Vector Compact product, and (2) claims 18-22 of the ’538 patent are not infringed by any accused product, nor do they cover Dometic’s domestic industry products.

Regarding invalidity, the Commission administrative law judge (“ALJ”) correctly determined that claims 1, 2, 4, 5, and 7 were anticipated by Dometic’s own Vector Compact product on summary determination below (Appx211-246), which was affirmed with minor modifications by the Commission (Appx189-210) shortly before the evidentiary hearing on the remaining claims. The ALJ and Commission correctly found that the Vector Compact readily satisfied the sole limitation in dispute, the “guiding cover” limitation, even under Dometic’s late-proposed construction of that term, and despite the ALJ’s finding that Dometic

failed to provide any notice during discovery of its contention that the Vector Compact lacked the claimed "guiding cover."

The ALJ correctly determined in his Final Initial Determination on Violation (Appx85-186) ("FID"), which the Commission Opinion affirmed and supplemented in pertinent part (Appx211-46), that Dometic failed to carry its burden of demonstrating that the accused products or its own domestic industry products satisfy claims 18-22 because they lack a blower that rotates about the claimed first axis. The Commission and the ALJ correctly determined that the rotation of the blower about the first axis must be a different rotation than the claimed rotation of the assembly's "duct element" around the guiding cover, defined to occur about the claimed second axis.

## II. STATEMENT OF THE ISSUES

Appellees' statement of the issues includes argumentative statements that render the statement inaccurate. Intervenors, therefore, provide the below counter-statement of the issues:

- Did the ALJ and the Commission correctly find anticipation of claims 1, 2, 4, 5, and 7 of the '351 Patent by the prior art Vector Compact device based on findings that the Vector Compact includes a "'cover-like element' that includes a 'flat section with a circular opening for directing to the adjacent blower and has a cylindrical section

extending from the opening[,]'" applying the Commission's understanding of Dometic's proposed construction of that term? *See* Appx228-229.

- Did the Commission correctly find that Dometic failed to satisfy its burden of proof regarding infringement and technical domestic industry regarding claims 18-22, which require that a covered device include (1) "a blower being rotatable about [a] first axis so as to alter an orientation of the outlet" and (2) "an assembly for adjusting the blower with respect to the main body about a second axis . . . the assembly including a guiding cover and a cylindrical duct element . . . and the duct element being rotat[a]bly adjustable around the guiding cover about the second axis . . . so as to alter the orientation of the outlet," where Dometic demonstrated only adjustment of the blower through rotation of the duct element around the guiding cover?
    - To the extent Dometic is correct that a second type of rotation is not required by claims 18-22, does Dometic's blower rotate about the claimed first axis when its duct element rotates about the claimed second axis?
    - To the extent that Dometic is correct that a second type of rotation is not required by claims 18-22, do the claimed first

and second axes in claims 18-22 need to be spatially different to avoid rendering the first and second axis limitations superfluous?

- Did the Commission err in finding that the alleged duct element in the domestic industry products is "cylindrical" where "cylindrical" was construed to have its plain and ordinary meaning, and where the domestic industry products' alleged duct element has an "asymmetric truncated cone" shape, such that the duct element has curved sides and non-congruent circles at its two ends?[1]

## III. STATEMENT OF THE CASE

Pursuant to Federal Circuit Rule 28(b), Respondents submit the following counter-statement of the case to note disagreements with, and omissions in, Dometic's Brief's Statement of the Case.

### A. Dometic Did Not Disclose the Prior Art Vector Compact Product to the Patent Office During Prosecution

Dometic omits a critical fact regarding the prosecution of the '351 patent that is highly relevant to its validity arguments, which is that Dometic did not

[1] Respondents submit this argument as an alternative ground for affirmance. Consideration of this alternative ground for affirmance is appropriate because, as prevailing parties, Respondents could not appeal the Commission's final determination of no violation. *See* 19 U.S.C. § 1337(c).

disclose its own prior art product, the Vector Compact. Appx296 (cover page of patent); Br. at 18 ("The Vector Compact was a Dometic product . . . .").

Dometic, as it did below, attempts to absolve itself from its failure to disclose its own prior art product by stating that the Vector Compact was "covered by the Dodge patent[,]" and that "the same Dodge patent [was] overcome during prosecution." *See* Dometic Br. at 18; *see also* Br. at 15-17, 39, 56. In addressing a similar argument below—i.e., that Dodge is "cumulative of the Vector Compact"—the Commission found Dometic's argument "meritless [because] it inaccurately describes the prosecution history concerning the Dodge patent . . . ." Appx204. As the Commission summarized, Dodge discloses rotation of a blower by means of unscrewing a square mounting plate (to which the blower was connected) and reconnecting the plate after rotating it ninety degrees. Appx204. Ron Pabisz, a named inventor on the '351 patent and Dometic's corporate technical witness, provided testimony that the innovation described in the Dodge patent related to "installing the condenser inside the evaporator shroud" but that the product depicted in the Dodge patent, the "CoolMate" product, had a "totally different connection between the blower and the main body [than] the Vector Compact unit." Appx7679-7680; Appx7693-7694.

It is, therefore, established that the Patent Office did not consider the Vector Compact product, which the ALJ and Commission found disclosed the allegedly novel "assembly" in the '351 patent.

Dometic's Statement of the Case also states that, prior to the invention, products had blowers that "had to be completely removed from the air conditioning system and thereafter reattached in order for the blower to be properly oriented . . . ." Br. at 7. That statement directly conflicts with the evidence and an unappealed finding of the ALJ and Commission that Vector Compact satisfies the limitation in dependent claim 5 of the '351 patent, "the duct element being slidingly adjustable around the guiding cover about the second axis." Appx196 (reproducing claim), Appx201-202 and n.11 (detailing that Dometic's only challenge to invalidity findings relate to "guiding cover" limitation); Appx238 (ALJ finding regarding Vector Compact duct element being "slidingly adjustable").

### B. Dometic Inaccurately Describes the '351 Patent's Disclosure Regarding the "Main Body" and the Claimed Axes

Regarding the "main body" limitation, Dometic suggests that the main body is mutually exclusive of the assembly described in the '351 patent. Dometic Br. at 8-9. The Abstract on the cover page of the '351 patent, however, describes the invention as "[a]n air conditioning system for a nautical vehicle [that] includes a

main body including an assembly, and a blower including an inlet and an outlet . . . .” Appx296.

Dometic notes that the ’351 patent states that the “main body” is “‘the drain pan 100 and what is mounted above it[.]’” Dometic Br. at 9. To the extent that statement is definitional, that definition would also contradict Dometic’s suggestion that the “main body” is mutually exclusive of the “assembly” (and therefore exclusive of the “guiding cover”). Specifically, the guiding cover disclosed in the ’351 patent is mounted above the drain pan and “includes slots 179 at the bottom that mate with projections 180 (FIG. 20) on the drain pan 100.” Appx331.

Regarding the “axes” claimed in claims 18-22 of the ’351 patent, Dometic provides its preferred interpretation of the claims as fact; in particular, Dometic asserts:

> The first axis (B in Fig. 30B-2 (Appx325)) in Claim 18 is the line about which the blower is rotatable to change the position of the outlet when viewed from the vantage point of the second base of the duct element (192 in Fig 30B-2 (Appx325)) that is **coupled** to the blower. Appx333, 14:11-12. The second axis (A in Fig. 30B-2 (Appx325)) is the line about which the assembly allows the blower to rotate to change the orientation of the outlet when viewed from the vantage point of the first base of the duct element (190 in Fig 30B-2 (Appx325)) that interfaces with the guiding cover.

Dometic Br. at 13; *see also* Br. at 14 (depicting described "vantage points" with annotated eyeballs on both sides of the device). The citations in the brief provide no support for Dometic's factual statements and depiction thereof. Rather, the description of the axes depicted in Figure 30B describes the two axes as the axes defined *in claim 1*, where the first axis is the axis about which the blades of the blower rotate and the second axis is the axis about which the blower itself can be rotated with respect to the main body. Appx332 (describing Fig. 30B). That description, in addition to describing different axes than those claimed in claim 18, does not refer to the two types of rotation described as being the same rotation viewed from different vantage points. *See id.*

Dometic's description of the two axes also omits the specification description of rotation of the blower the Commission relied on in determining that the claim requires two different types of rotation. In particular, after describing rotation of the "blower 2 and the duct element 184" (*see* column 11, line 41 through column 12, line 3), the '351 patent describes attaching the blower in different orientations with respect to the duct element. Appx332. That discussion describes how orienting the blower in a specific way with respect to the duct element can change the profile of the device and the orientation of the blower outlet:

> The overall height of the air conditioner 1 with the rotatable blower 2 will change depending on how the

> blower 2 is fastened in relation to the duct element 184. Therefore, the maximum height of an air conditioner 1 can be restricted by adjusting the orientation in which the blower 2 is fastened to the duct element 184.

Appx332; *see also* Appx319-320.

### C. Counter-Statement Regarding Procedural History and Relevant Decisions Below

Dometic's Brief omits or misstates certain procedural and substantive history from the underlying Investigation. Intervenors provide the following counter-statement regarding the material decisions made by the ALJ and the Commission, as well as the history underlying those decisions.

#### 1. Dometic Successfully Opposed a Construction of the "Assembly" that Would Cover the Disclosed Embodiments and Equivalents Thereof

During claim construction briefing, Respondents' Opening Brief set forth Respondents' position that the "assembly for adjusting the blower with respect to the main body" should be construed as a functional limitation under 35 U.S.C. § 112(f) limited to the apparatus disclosed in the Asserted Patent. Appx1900-1909. Such a construction would have limited the claimed guiding cover to the structure disclosed in the '351 patent and equivalents thereto. In opposition, Dometic proposed construing the term according to its plain and ordinary meaning. Appx2305.

Respondents noted in *Markman* briefing that, if the term "cylindrical duct element" were not interpreted according to Section 112(f)—i.e., if it were afforded

its plain and ordinary meaning—the duct elements disclosed in Figures 24 and 30 (Appx319, Appx325-326) would not be covered by the claims of the patent. Appx1905 (n.4).

The ALJ, in an order that is unchallenged on appeal, rejected Respondents' argument, but provided no requirements or limitations regarding what constitutes a guiding cover. Appx3769-3770. The ALJ rejected Respondents' argument that "[t]he 'guiding cover' element also fails to sufficiently inform one of skill in the art what structure the patentee intended to cover[,]" concluding that it is "a structure that covers and guides the airflow to the blower from the rest of the air conditioning unit . . . ." Appx3771. Regarding "cylindrical duct element," the ALJ concluded that the inclusion of "cylindrical" provided sufficient structure to understand what the term covers: "Respondents do not dispute that the term 'cylindrical duct element,' which is what the claim actually says, refers to at least a known class of structures[.]" Appx3771.

The ALJ thus concluded that the "assembly for adjusting the blower with respect to the main body" should be afforded its plain and ordinary meaning and that there was no need to articulate that plain and ordinary meaning. Appx3772.

### 2. Dometic Failed to Contend that the Vector Compact Lacks a Guiding Cover During Discovery

Dometic's Brief alludes to the *Markman* proceedings and provides a *post hoc* rationale for not seeking a construction of "guiding cover," asserting that,

"[g]iven the similarity of the accused component, and the apparent absence of such a component in the asserted prior art, Dometic did not seek a claim construction for the term at the time of the initial *Markman* hearing." Br. at 20. That explanation, however, conflicts with the ALJ's conclusions in Order No. 21 that Dometic's discovery responses failed to "place Respondents on notice that the Vector Compact lacked a guiding cover at all, or that it lacked a guiding cover for the reasons stated by [Dometic's technical expert] Dr. Paulus." Appx13818.

That order granted Respondents' motion to strike Dometic's expert's opinions regarding the construction of "guiding cover" and his basis for concluding that the Vector Compact lacked a guiding cover. *See id.*; *see also* Appx8607-9658. Respondents' motion addressed the confusion caused by Dometic's failure to provide clear contentions, noting that, even after Respondents filed for summary determination of invalidity over the Vector Compact product, Dometic continued to refuse to provide their proposed construction of "guiding cover." Appx8634-35.[2]

In granting the motion to strike Dometic's then-new positions, advanced through their expert Dr. Paulus, regarding whether the Vector Compact has a guiding cover, the ALJ noted that Dometic's infringement and domestic industry

[2] Dometic's refusal to clearly set forth a construction of the term—even after *Markman* and after the motion for summary determination was filed—undercuts Dometic's criticisms of the ALJ and Commission for not "not engag[ing] in a claim construction analysis[.]" *See* Dometic Br. at 24.

contentions "clearly identif[ied] only the cylindrical protrusion on the representative accused products as the guiding cover . . . , whereas Dr. Paulus identifies the guiding cover as the combination of the cylindrical protrusion and a 'flat section with a circular opening[.]'" Appx13819; *see also* Dometic Br. at 21-24. Accordingly, the ALJ struck those opinions from Dr. Paulus's expert report, but he noted that the same arguments were considered in granting summary determination of invalidity over the Vector Compact in any event. Appx13819.

Regarding Dometic's modification of its infringement contentions to clearly identify the front of the evaporator cover, as opposed to only the protrusion therefrom, the ALJ noted that "Dometic's contentions are potentially ambiguous" about whether the arrow pointing to the protrusion also "include what the protrusion is attached to." Appx13819-13820. In his Order No. 22, the ALJ came to a similar conclusion regarding Respondents' invalidity contentions, which similarly pointed only to the protrusion from the evaporator cover on the Vector Compact. Appx13824-13825.

That history informs Respondents' inclusion of a claim chart pointing only to the cylindrical protrusion on the front of Vector Compact's evaporator cover as the "guiding cover"; Respondents, in their validity contentions, pointed to the exact same feature as Dometic in its infringement and domestic industry contentions. *See* Dometic Br. at 39-42.

### 3. The ALJ and Commission Concluded that the Vector Compact Has a Guiding Cover Under Dometic's Proposed Construction

The Commission's summary determination that the Vector Compact anticipates claims 1, 2, 4, 5, and 7 of the '351 patent stems from the Commission's affirmance, with certain additional findings and modifications, of the ALJ's Initial Determination that issued as Order No. 19. *See* Appx211-46; Appx187-210.

In Order No. 19, the ALJ found all limitations of claims 1, 2, 4, 5, and 7 of the '351 patent were present in the Vector Compact product. Appx219-239. Despite Dometic's failure to previously challenge the alleged absence of a guiding cover in the Vector Compact, discussed above in Section III.C.2, *supra*, the ALJ methodically addressed and rejected Dometic's new arguments. Appx224-232. The ALJ noted the dispute among the parties regarding Dometic's infringement contentions, which mirrored Respondents' invalidity contentions, pointing only to the cylindrical protrusion extending from the front of the evaporator cover. Appx224-230. The ALJ found that "the Vector Compact has a 'guiding cover,' whether that element is interpreted as the combination of a flat section, circular opening, and cylindrical protrusion, or as just a cylindrical protrusion." Appx230.

Dometic's statement (Br. at 24)—presented as fact—that the ALJ did not apply its proposed construction is contradicted by the ALJ's specific finding under Dometic's proposed construction:

> Dometic argues that the "guiding cover," as a "fan plate," "is a 'cover-like element' that includes a 'flat section with a circular opening for directing to the adjacent blower and has a cylindrical section extending from the opening.'"

Appx228. That statement, in conjunction with the table provided in Dometic's Brief (Br. at 32), confirms that he ALJ applied the construction proposed by Dometic. In so doing, the ALJ concluded that "such a structure is precisely what the Vector Compact has, as Respondents explain." Appx228-229. The ALJ further found that the evaporator cover found to satisfy the "guiding cover" satisfied the functional element of keeping the blower in air communication with the main body, concluding that:

> Finally, it is clear from the photographs above that "the Vector Compact duct element (the silver cylindrical element) and the cylindrical extension protruding from the cover over the main body" fit together so as to "keep the blower and the main body in air communication."

Appx228.

Dometic's suggestion that the specified features of the guiding cover were found "**anywhere in the product**" is contradicted by a comparison of the patent figures to the Vector Compact product depicted in Dometic's Brief. *See* Br. at 23-24 (citing Appx7232); Br. at 11. The flat section of the evaporator cover, the circular opening, and the cylindrical protrusion found in the Vector Compact product are located on the "front" of the evaporator cover, where the evaporator

connects to the blower, just as in the ’351 patent. *See* Br. at 11 (depicting Fig. 22, Appx317 (annotated)).

Dometic petitioned the full Commission for review of Order No. 19. In an Opinion issued on September 13, 2023, the Commission reviewed the ALJ’s anticipation determination and, on review, affirmed and supplemented his initial determination as set forth in the Opinion. Appx190. The Commission Opinion largely supplemented Order No. 19 by addressing, and rejecting, arguments presented in Dometic’s petition for review. As noted above, the Commission found Dometic’s argument that the Dodge patent was cumulative of the Vector Compact “meritless as it inaccurately describes the prosecution history concerning the Dodge patent[.]” Appx203-207.

#### 4. The ALJ Flagged a Claim Construction Issue Relating to the Axis Limitations in Order No. 20

Dometic filed for summary determination that it satisfied the Commission’s domestic industry requirement in June 2023. Appx13811. The ALJ granted Dometic’s motion as to the “economic prong” but, in Order No. 20, denied Dometic’s motion as to the “technical prong” of domestic industry,[3] concluding that issues of material fact remained regarding whether Dometic’s representative

[3] As used herein, the “economic prong” of domestic industry refers to the significance of the investments with respect to a product allegedly protected by the Asserted Patents; the “technical prong” refers to whether those products are, in fact, protected by (i.e., covered by) a claim or claims of the Asserted Patents.

domestic industry product is covered by claims 18-22 of the ’351 patent, the only asserted claims that were not found invalid by virtue of Order No. 19. Appx13811-13812. In particular, the ALJ concluded that Dometic failed to identify two distinct axes in its product, noting that the claim requires: (1) “the blower to be rotatable about the first axis toward first and second directions,” and (2) “rotation of the duct element around the guiding cover, and about the second axis” to “alter the orientation of the outlet.” Appx13813-13814 (internal quotation marks omitted). The ALJ summarized the failure of proof by concluding that, “according to Dr. Paulus, the ‘first and second directions’ limitation is satisfied by the ‘assembly for adjusting the blower,’ rather than by the rotatable blower, as the claim requires.” Appx13813-13814. The ALJ noted that the term had not been construed in Order No. 20 or in Order No. 19, which issued the same day, thereby identifying an unresolved claim construction issue. *See id.*; *see also* Appx240 (“Inasmuch as this presents a claim construction question, no construction has been conducted, although Order No. 11 included some apparently relevant observations . . . .”).

### 5. The ALJ and Commission Determined that Dometic Failed to Prove Rotation of the Blower About a First Axis as Required by Claims 18-22

At the Pre-Hearing Conference, the ALJ and the parties addressed the outstanding claim-construction issue regarding what the two “axis” limitations in claims 18-22 require. *See generally*, Appx25820-25865. The ALJ emphasized his

desire to be even-handed in seeking argument and evidence on the issue "because [he] really would like to have some help understanding this claim language[,]" indicating that he "would like both sides to be able to brief this issue as a claim construction issue." Appx25845. Contrary to Dometic's argument that Respondents argued "for the first time" (Dometic Br. at 25) that the claims require two types of rotation after the hearing, counsel for Respondents noted at the Pre-Hearing Conference that the issue relates to a construction presented by Respondents during *Markman*, and counsel explicitly stated that "we believe that the claim requires two distinct types of rotation to alter the orientation of the blower outlet." Appx25848.

As the ALJ previewed in the Conference, the ALJ ultimately requested that both parties brief the issue of whether claim 18 requires two axes. *See* Appx114. In his Final ID, the ALJ provided a detailed explanation regarding Dometic's contentions and positions related to the "axis" limitations of claims 18-22. *See* Appx111-116. The ALJ characterized Dometic's presentation regarding those claims as "puzzling from the outset[,]" noting the operative portions of Order Nos. 19 and 20, which highlighted the dispute as it relates to the domestic industry products. Appx113-114. The ALJ observed that, even after those orders issued, "Dometic ultimately did not attempt to amend its contentions, . . , seek further claim construction, or otherwise do anything to correct the apparent failure of

proof noted in Order No. 20." Appx114. The ALJ pointed out that Dometic specifically argued that the accused products and domestic industry products could not rotate about two independent axes:

> Dometic not only failed to introduce evidence of two axes at the evidentiary hearing, it also contends that every physical product in evidence, Accused and DI, has a "unitary structure" to the blower and duct element, "such that the duct element cannot rotate independently of the blower and vice versa."

Appx114-115. With that history, the ALJ found that "Dometic's failure of proof, at least as to the DI Products, is fatal to its case." Appx115 ("Dometic has been on notice since . . . two months before the evidentiary hearing[] that a construction requiring two axes of rotation might be adopted, and it has consistently failed to identify two axes in either the Accused Products or the DI Products.").

The ALJ set forth his construction of the limitation requiring that the "blower being rotatable about [a] first axis so that the outlet can be oriented toward a first [direction] and a second direction" (which the ALJ defined as the "axis limitation") at Appx120: "The axis limitation is construed to require a different type of rotation separate from the assembly's adjustment/rotation, and involving a structural component that may be a part of, but is identifiably distinct from, the claimed portion of the 'assembly.'" *See* Appx118-120.

The ALJ provided detailed explanation and analysis in support of that construction. Appx121-131. In particular, the ALJ first noted that the plain

language of the claim referred to a different type of rotation, involving distinct structural components, from the separately claimed rotation of the assembly about the guiding cover. Appx121. The ALJ distinguished the "axis limitation" rotation from the rotation required by the "assembly" element, parsing the elements of the claim to conclude that the rotation claimed by the "assembly" limitation relates to rotation of the duct element around the guiding cover at the second base. Appx121-122. The ALJ further analyzed the dependent claims, claims 19-22, noting that claims 19-21 "plainly relate to the blower's capability for rotation and not the assembly's capability[,]" whereas "[c]laim 22 clearly pertains to the duct element/guiding cover connection[.]" Appx122-123.

The ALJ further concluded that his construction "that the air conditioning device requires two rotation modes involving two structures is consistent with the specification." Appx123. Specifically, the ALJ pointed out that the specification describes changing the orientation of the outlet by (1) rotating the blower with respect to the duct element or (2) by rotating the duct element relative to the guiding cover when the blower is coupled to the duct element. *Id.* Noting that the second type of rotation was not the subject of dispute, the ALJ provided a detailed explanation of where and how the '351 patent specification describes rotating the blower with respect to the duct element. Appx124-126. The ALJ's explanation included reference to the specification's explicit description of how the overall

height of the air conditioner can be varied "**by adjusting the orientation in which the blower 2 is fastened to the duct element 184.**" Appx125 (quoting Appx332). The ALJ further explained that that textual description is consistent with figures 24A, 24B, and Figure 25, which show evenly spaced holes that permit rotation of the blower to different orientations of the blower with respect to the duct element.




FIG. 24A FIG. 24B FIG. 25

Appx125-126.

Finally, the ALJ explained that his "interpretation aligns with the prosecution history[,]" detailing the amendment necessary to gain allowance from the ability to rotate "about an axis" to the ability to rotate (1) about a first axis and (2) about a second axis as detailed in the assembly limitation. Appx126. The ALJ concluded that "amending the claim language during prosecution from 'an axis' to a 'first axis' suggests that the blower's rotation must occur over a different axis than the assembly's rotation." *Id.*

The ALJ proceeded to a detailed explanation for his rejection of Dometic's arguments, concluding that "Dometic's proposed construction . . . would read the axis element entirely out of the claim, as well as require the blower's outlet

orientation to change solely as a result of adjusting the assembly[,]" and provided a "redline" of the claim's text to demonstrate how it would do so:

> An air conditioning device for a nautical vehicle including:
>
> a main body; and
>
> a blower including an inlet and an outlet, the inlet being in air communication with the main body~~, the blower being rotatable about first axis so that the outlet can be oriented toward a first directon and a second direction, and the first and second directions point to substantially different lateral sides of the main body~~, and
>
> an assembly for adjusting the blower with respect to the main body about an ~~second~~ axis so as to alter an orientation of the outlet so that the outlet can be oriented toward a first direction and a second direction, and the first and second directions point to substantially different lateral sides of the main body, the assembly including
>
> a guiding cover and a [cylindrical] duct element for maintaining the main body and the blower in air communication with one another,
>
> the duct element having a first base and a second base, and coupled to the blower at the second base, the first base of the duct element dimensioned to correspondingly fit the guiding cover, and
>
> the duct element being [rotatably] adjustable around the guiding cover about the ~~second~~ axis at the first base so as to alter the orientation of the outlet.

Appx127-128.

On March 7, 2024, the Commission issued a notice that it "determined to review in part and, on review, to affirm with modification the FID's finding of no violation." Appx1-3. The Commission notice also vacated, or determined to review and take no position on, various non-dispositive findings in the ALJ's FID. *Id.* The

Commission's notice provided that a concurrently issued Commission Opinion set forth its determinations on certain issues. Appx3.

That Opinion provided detailed bases for the Commission's affirmance of the ALJ's FID and its rejection of Dometic's arguments regarding the axis limitation. Appx5-14 (detailing support for the construction in the specification); Appx29-39 (summarizing ALJ's decision); Appx39-55 (addressing and rejecting Dometic's arguments in its petition for review).

In addition, the Commission supplemented the ALJ's reasoning with deposition testimony of Ron Pabisz, Dometic's corporate representative and a named inventor on the '351 patent, supporting the construction adopted by the ALJ. Appx55-59. In particular, the Commission provided a detailed explanation regarding Mr. Pabisz's corporate testimony that, *inter alia*, "[t]he shape as it's shown in page – Figures 24 is the real – the crux of the patent here in having a ring that allowed you to have ***two axes*** with the same ring; ***an axis for the blow[er] rotation*** *and* ***an axis for the rotation relative to the shroud[] . . .*** It's the ***ability for it to have two rotations of axes that's novel***." Appx55-56 (internal quotation marks and footnote omitted) (citing Appx36213-36214).

The Commission reproduced additional testimony, and a marked-up diagram of Figure 24B, from the Pabisz deposition that supports the ALJ's construction by

identifying the two axes as one with respect to the "Blower" and one with respect to the "Shroud":




A It's the ability for it to have two rotations of axes that's novel.

Q Okay. And can you take the pen and mark on Figures 24a or maybe I think it's Figure 24b where those two axes roughly would be and what they correlate to?

A (Indicating).

Q And I see you marked blower and shroud, am I reading that correctly?

A Uh-huh (affirmative response).

Appx56.

The Commission provided a detailed explanation of its rejection of Dometic's arguments regarding Mr. Pabisz's testimony, concluding that:

> As an inventor of the '351 patent and Dometic's director of engineering, Mr. Pabisz certainly qualifies as a person of ordinary skill in the art,[] and his testimony is thus highly relevant to the skilled artisan's understanding of the crux of the '351 patent.

Appx59.

Applying that construction and analysis, the Commission "affirm[ed] the FID's finding of non-infringement based on Dometic's failure to prove that the accused products satisfy the axis and directional limitations" and "affirm[ed] the FID's finding that the technical prong is not satisfied based on Dometic's failure of

proof and vacate[d] certain of the ALJ's independent findings." Appx56-57, Appx64, Appx74.

#### 6. The ALJ and Commission Found Dometic's Product's "Asymmetric Truncated Cone"-Shape Duct Element to be "Cylindrical"

The ALJ and Commission made an additional finding that is potentially dispositive of this appeal. As noted above, the ALJ adopted a plain-meaning construction of the components that comprise the "assembly" limitation, including the claimed "cylindrical duct element." Appx3771-3772 ("Because the rest of the claim language describes the required elements of the assembly, there presently appears to be no need to articulate that plain and ordinary meaning[.]"). That construction was not challenged below, nor is it challenged in this appeal.

The ALJ and Commission, applying that construction, found that Dometic's domestic industry products' duct element satisfies the "cylindrical" limitation because they are "shaped like the same asymmetric truncated cones found in one of the two embodiments disclosed in the 351 patent[.]" Appx149-150. The Commission affirmed, with similar reasoning, concluding that "the FID properly rejects Respondents' argument because 'a construction that excludes the preferred embodiment, as described in Figure 24 or preferred embodiments described in the specification, is 'rarely, if ever, correct.'" Appx78-79 (internal quotation marks omitted). The ALJ and Commission, therefore, found the domestic industry

products' duct element, which has curved sides, with circular ends that are non-congruent and that have a different center-point, to be "cylindrical" according to the plain and ordinary meaning of that term.

### D. Dometic's Request for Relief Mis-States the Procedural Posture of the Investigation

Dometic's Statement of the Case omits any discussion of the procedural posture of the case, or any discussion of how that posture relates to the specific arguments advanced therein. Elsewhere, Dometic requests that this Court adopt its arguments and direct the Commission to find a violation of Section 337 on remand. Dometic Br. at 72; *see also* Br. at 50. That request mischaracterizes the current procedural posture of the case, in which the Commission decided that claims 1, 2, 4, 5, and 7 of the '351 patent are invalid as anticipated over one prior art reference on summary determination, and decided that there is no violation as to the remaining claims, claims 18-22, based solely on findings of no infringement and no domestic industry. Appx6 (detailing invalidity findings on summary determination), Appx61-63 (finding no infringement), Appx71-76 (finding no domestic industry).

In particular, accepting Dometic's arguments would not, as Dometic asserts, lead to a finding of violation. Any change to the Commission's findings regarding invalidity of claims 1, 2, 4, 5 and 7 would necessitate, at a minimum (a) applying the new construction of the "guiding cover" limitation for purposes of infringement

and domestic industry, and (b) determining validity of those claims over the remaining prior art references. Any change to the construction of the "axis" limitations would also require a remand to determine, at a minimum, (a) whether the accused products and domestic industry products satisfy the new construction, and (b) whether the claims are invalid as construed. *See* Appx80 (taking no position on the validity of claims 18-22 due to the dispositive findings of noninfringement and lack of domestic industry); *see also* Appx164-165 (finding the prior art Vector Rotary product satisfied all limitations of claims 18-20 except for the required two types of rotation), Appx166-168 (finding claims 18-20 obvious if two different types of rotation are not required).

## IV. SUMMARY OF ARGUMENT

Dometic's arguments on appeal fail to demonstrate any error in the ALJ's and Commission's summary determination that the Vector Compact anticipates claims 1, 2, 4, 5, and 7 of the '538 patent or the ALJ's and Commission's determination that Dometic failed to demonstrate the required rotation of the blower about the first axis in the accused products or in Dometic's own domestic industry products.

Dometic's arguments, as the counter-statement of the case above and the arguments below demonstrate, are largely based on mischaracterizations of the record. Contrary to Dometic's assertions, the record demonstrates that Dometic

was given repeated opportunities to demonstrate any basis for its argument that the Vector Compact lacked a guiding cover—despite not disclosing that argument during discovery—and to demonstrate the "second" type of rotation claimed in claims 18-22. Dometic failed to do so below and fails on appeal to demonstrate any error in the Commission's determinations.

Regarding the Commission's validity determination, the Vector Compact clearly discloses a "guiding cover" under Dometic's proposed construction. Dometic appears to agree that the Vector Compact's evaporator cover satisfies the individual elements in its proposed construction of "guiding cover," arguing that the evaporator cover is part of the "main body" and therefore, Dometic argues, not part of the claimed assembly. That argument fails for two principal reasons, detailed below: (1) the assembly is described in the specification as part of the main body; and (2) the guiding cover disclosed in the asserted patent also covers the evaporator and contains the elements that define Dometic's construction in the same location as the guiding cover identified in the Vector Compact.

Regarding the Commission's determination that the accused products and the domestic industry products are not covered by claims 18-22, that determination is well supported. Legally, this Court's case law supports the Commission's conclusion that, in claiming two separate types of rotation, of two different elements, about two different axes, claims 18-22 logically require that the

identified rotation about the first axis *can not* be the same rotation as the claimed rotation about the second axis. To hold otherwise would render significant portions of the claim superfluous and, indeed, nonsensical. Furthermore, any other conclusion would eliminate the purportedly novel feature of an air conditioner that allows for rotation about two distinct axes—described by the inventor in a corporate deposition as the "crux" of the invention.

Even if Dometic's proposed construction were adopted, there are alternative bases for affirmance of the Commission's determination that the domestic industry products and/or the accused products are not protected by claims 18-22. First, the blower of the domestic products, when connected to the duct element of those products, does not rotate about the claimed first axis, but rather orbits about the claimed second axis, due to the offset, non-concentrical nature of the duct element rotating around the guiding cover. Second, even if the same physical rotation can result can satisfy both claimed types of rotation, the claim should be interpreted to require rotation about spatially different first and second axes, to avoid rendering the first- and second-axis limitations superfluous.

Finally, under the unappealed plain-meaning construction of cylindrical, the domestic industry products' duct elements are not cylindrical because they do not have straight sides or congruent ends. Rather, as found by the ALJ and the

Commission, the duct elements are in the shape of an "asymmetric truncated cone."

## V. STANDARD OF REVIEW

Regarding Dometic's appeal of the invalidity determination, the sole limitation Dometic asserts is missing from the Vector Compact is the claimed assembly's "guiding cover." Because the ITC applied Dometic's proposed claim construction in making its determination, Dometic's challenge should be limited to whether the ITC's factual finding that the Vector Compact satisfies the limitation is supported by substantial evidence.

Regarding Dometic's appeal of the ITC's determination that the accused products and Dometic's domestic industry product do not satisfy claims 18-22, the dispositive issue is whether those products satisfy those claims' requirement that a covered device include a "blower rotatable about first axis" in addition to meeting the claims' limitations relating to rotation of the "assembly." Issues regarding the Commission's claim construction should be reviewed *de novo*, and issues surrounding the Commission's factual findings, including whether Dometic failed to identify the required two axes (Appx115), should be reviewed for substantial evidence.

Regarding Intervenors' alternative argument in favor of affirmance relating to whether Dometic's products contain a "cylindrical duct element," the

construction of "cylindrical" as having its plain meaning is not the subject of any party's arguments on appeal. Accordingly, review of whether that plain meaning requires covered duct elements to have straight sides and/or congruent ends should be reviewed *de novo*, and whether Dometic's domestic industry products' "duct element" is cylindrical under the term's plain meaning should be reviewed for substantial evidence.

# VI. ARGUMENT

## A. The Commission Correctly Found that the Vector Compact Has a Guiding Cover.

### 1. The Commission Found that the Vector Compact Had a Guiding Cover Under Dometic's Proposed Construction

As is detailed above, Dometic did not seek a construction of "guiding cover" during the *Markman* proceedings below, and Dometic instead successfully opposed a construction that "guiding cover" be limited to the structure disclosed in the '351 patent or an equivalent structure thereto. Appx3768-3772. The ALJ's *Markman* Order adopted Dometic's proposed construction and stated that a "'guiding cover' is a structure that covers and guides the airflow to the blower from the rest of the air conditioning unit . . . ." Appx3771.

In considering Respondents' Motion for Summary Determination, and despite finding that Dometic *never* argued that the Vector Compact does not have a guiding cover during discovery, the ALJ nonetheless applied Dometic's then-new claim construction in granting summary determination of anticipation of claims 1,

2, 4, 5, and 7 by the Vector Compact. Appx13818 (finding Dometic did not put Respondents on notice of its "guiding cover" argument); Appx228-229. Indeed, the ALJ recited the *exact* construction that Dometic argues he did not apply, and found that "such a structure is precisely what the Vector Compact has . . . ." Appx228-229.

Despite recognizing below that the ALJ applied Dometic's construction, *see* Appx13858-13859, Dometic's Brief ignores the ALJ's explicit citation and application of its proposed construction, arguing that the ALJ applied a different construction: "a combination of a flat section, circular opening, and cylindrical protrusion." Br. at 32. The quoted language, however, is not the application of a different construction. Rather, the quoted sentence is a shorthand reference to the construction Dometic proposed and the ALJ applied; in context, the ALJ concluded that "the Vector Compact has a 'guiding cover,' whether that element is interpreted as the combination of a flat section, circular opening, and cylindrical protrusion, or as just a cylindrical protrusion." Appx230.

Dometic does not dispute that those enumerated features are present in the Vector Compact device, but instead argues that the ALJ's shorthand "construction" led him to find the three enumerated features of the guiding cover "**anywhere in the prior art device.**" Dometic Br. at 31 ("The erroneous, overbroad claim construction resulted in a finding of anticipation through piecemeal selection of

unrelated elements to find a 'guiding cover' . . . ."). That argument fails for the simple reason that the features of the "guiding cover" of the Vector Compact were found in the *exact* location as the guiding cover depicted in the '351 patent, i.e., the front of the evaporator cover that connects to the blower:






Appx7232.

The ALJ, therefore, correctly found that the Vector Compact satisfies Dometic's proposed construction, i.e., that it constitutes a "fan plate" that "is a 'cover-like element' that includes a 'flat section with a circular opening for directing to the adjacent blower and has a cylindrical section extending from the opening.'" Appx228 (citing Appx9682). That finding is supported by undisputed, unmistakable evidence demonstrating that the evaporator cover or "shroud" of the

Vector Compact has all the features included in Dometic's construction. *See, e.g.*, Br. at 23 (citing Appx7232).

### 2. Dometic's Arguments that the Commission Erred Because the Guiding Cover Cannot Be Part of the "Main Body" Fail

Dometic argues that the Vector Compact's evaporator cover cannot be the "guiding cover" claimed in the '351 patent because the guiding cover is part of the assembly, and, according to Dometic, the Vector Compact's evaporator cover is part of the "main body." Dometic Br. at 33-38, 43-46. For this argument to succeed, the '351 patent must support Dometic's arguments that (1) the assembly and main body are mutually exclusive portions of the device, such that components that are part of one cannot be part of the other; and (2) an evaporator cover with the enumerated features that guides air to the blower is part of the main body, and not the assembly.[4] As demonstrated below, the '351 patent does not support either argument, because the main body is described as including the assembly and, even if it were mutually exclusive, the '351 patent does not otherwise define an evaporator cover or "shroud" to be part of the main body.

[4] If the Court were to agree with Dometic that the two components must be mutually exclusive and that an evaporator cover is part of the main body, affirmance of the Commission's finding that Dometic's domestic industry product is not covered by the patent would be warranted because the component found to be a guiding cover in that product is an evaporator cover that is located in the same location as in the Vector Compact.

#### a) The ’351 Patent Provides that the “Assembly” Is Part of the “Main Body”

Dometic’s Brief cites the rebuttable presumption that the “main body” and “assembly” limitations’ separate appearance in the patent claims “indicate[s] separate and distinct physical structure.” Br. at 33 (citing *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024)). As an initial matter, even if that presumption were not overcome, Dometic concedes that the main body includes multiple components distinct and separate from the assembly, including the evaporator, compressor, and condenser. *See, e.g.* Dometic Br. at 35. Accordingly, even if the main body included the “guiding cover,” the main body and assembly would not have the same structure, but rather would merely have overlapping components (e.g., the evaporator cover).

In any event, the presumption is readily overcome by the text of the ’351 patent. In particular, the ’351 patent Abstract states that the disclosed air conditioning system “includes a **main body including an assembly**, and a blower . . . .” Appx296 (emphasis added). Similarly, the specification states that the air conditioner depicted in Figure 1 “can largely be divided into a main body 4 and the blower 2.” Appx332. Figure 1, therefore, depicts the guiding cover 170, as part of the main body:




FIG. 1

Appx297 (rotated). Furthermore, the ’351 patent describes the main body depicted in Figure 1 as “compris[ing] the drain pan 100 and what is mounted above it.” Appx332. The specification elsewhere describes the guiding cover 170 as being above the drain pan and including “slots 179 at the bottom that mate with projections 180 (FIG. 20) on the drain pan 100[,]” again indicating that the claimed guiding cover is part of the main body, in addition to being part of the assembly. Appx331 (describing Figs. 1, 22, and 23).

Accordingly, the ’351 patent clearly provides that the assembly, including the guiding cover, is part of the main body, rebutting any presumption that the main body and assembly of the device cannot have any overlapping components.

### b) The ’351 Patent Does Not Otherwise Define the Guiding Cover as Part of the Main Body

To the extent the Court were to find that the *Google* presumption requires the main body and assembly to have no overlapping components, and to the extent the Court were to find that the presumption is not rebutted, the Court should construe “main body”—which was not construed below—to exclude a covered device’s evaporator cover, to avoid reading out all preferred embodiments in the specification.

Dometic largely ignores the portions of the specification recited above in asserting that the guiding cover “is described exclusively as a discrete component of the assembly.” *See* Dometic Br. at 34. To the extent that the portions of the specification defining the assembly as part of the main body are deemed not to overcome the *Google* presumption, there is no support for including the guiding cover as part of the main body. Indeed, Dometic’s own brief describes the compressor, the evaporator, and the condenser as “parts of the ‘main body’” and the shroud disclosed as a “cover of the main body” as opposed to part of the main body itself. Br. at 31-32; *see also* Br. at 23 (“cover **over the main body**”), 27 (“the shroud of the ‘main body’”), 35 (“a housing on the ‘main body’”), 42 (“part of the shroud of the main body”), 43 (“a cover on the ‘main body’”), 46 (a covering of the main body).

To the extent a component that covers a portion of the main body such as the evaporator is defined to be part of the main body, and to the extent components of a covered device cannot be part of both the main body and the assembly, every embodiment in the claims would be excluded from coverage by any claim of the patent. The disclosed guiding cover, after all, *covers* the evaporator and connects to the drain pan. Appx317 (Fig. 22); Appx331 ("[A] fan duct plate or a guiding cover 170 is fastened to a blower side of the evaporator 20 and is a cover-like element that is placed on top of the evaporator 20."). The '351 patent does not describe any "guiding cover" that does not cover the evaporator, nor any guiding cover that is not directly above the drain pan. *See generally*, Appx296-333. And all claims of the '351 patent claim both a main body and an assembly.

Accordingly, to the extent the *Google* presumption is determined not to have been rebutted, an evaporator cover that has the features described in the '351 patent (flat portion, circular hole, cylindrical protrusion) should be considered exclusively part of the assembly. If Dometic's construction were adopted, no embodiments disclosed in the '351 patent would be covered, nor would any accused or domestic industry product, warranting a finding of no violation as to any asserted claim.

### 3. Dometic Fails to Identify Any Disputed Fact Regarding the Vector Compact's Identified Guiding Cover

Dometic half-heartedly argues that, even if the Commission's construction of guiding cover were correct—itself a misstatement because the Commission used Dometic's construction to demonstrate the absence of any dispute—the Commission erred in finding anticipation. Dometic Br. at 43. Dometic's arguments are largely a rehash of their flawed claim construction arguments, which are addressed above. *See* Br. at 43-48.

Dometic suggests that the guiding cover of the Vector Compact is not a "plate," rendering the ALJ's decision erroneous. As an initial matter, Dometic's proposed construction did not require that a "guiding cover" be a "plate," but rather used "fan plate" an alternate name for a "guiding cover," with the remainder of the construction defining the features of the "guiding cover" or "fan plate." Appx9682 ("The '351 Pat. further describes the aforementioned 'guiding cover' as a 'fan plate' that is a 'cover-like element' that includes a 'flat section with a circular opening for directing to the adjacent blower and has a cylindrical section extending from the opening.'").

Even if the alternate description of the claimed "guiding cover" as a "fan plate" were considered definitional, the Vector Compact's guiding cover includes a front plate, which is attached to other portions of the cover. Appx7232; Appx228-229. That is consistent with the front plate of the guiding cover depicted in the

’351 patent, which is connected to a portion of the cover that covers the top of the evaporator and overhangs the “back” of the evaporator:



FIG. 23

Appx318. Dometic should not be heard to argue that the use of the term “fan plate” has a special meaning limiting the number of sides of the evaporator that a “guiding cover” can cover, having failed to make that argument below, and having successfully resisted a construction of “assembly” that would have limited covered structures to equivalents of the guiding cover disclosed in the ’351 patent. *See supra* at Section III.C.2.

### B. The Commission Correctly Determined that Claims 18-22 Require Two Distinct Types of Rotation About Two Distinct Axes.

In seeking to demonstrate error to the ALJ's and the Commission's extensive analysis of the two separate "axis" limitations, Dometic's Brief argues, in varying ways, that claims 18-22 cover products that rotate in only one way (by rotation of the duct element around the guiding cover), and about only a single axis (i.e., the axis of rotation about which the duct element rotates). *See* Br. at 48-50. As demonstrated below, Dometic's argument conflicts with every type of evidence relevant to determining the meaning of a patent claim.

In support of its theory, and in the face of that extensive support, Dometic provides an annotated picture depicting its argument that the claim does not require two types of rotation about two axes, asserting that the claim requires merely observing the same rotation from two different sides of the device. *See* Br. at 49 (annotated picture). Dometic's argument would read out, or render superfluous, critical portions of the claims that call for two distinct types of rotation/adjustment, about two axes, and it fails for that reason and the reasons detailed below.

#### 1. The Claim Language Supports the Commission's Construction

The ALJ, in a portion of his FID affirmed by the Commission, provided a detailed explanation supporting his construction that the "axis limitation" (i.e., the first axis limitation) "require[s] a different type of rotation separate from the

assembly's adjustment/rotation, and involving a structural component that may be a part of, but is identifiably distinct from, the claimed portion of the 'assembly.'" Appx120; Appx24.

In his supporting explanation, the ALJ properly started his analysis with the text of the claim, highlighting the two types of rotation described therein. *See* Appx120-123. His analysis noted that the plain language, "the blower being rotatable[,]" refers to a different type of rotation than the limitations relating to the assembly's rotation, in that the first axis limitation requires the blower to be capable of rotation about a first axis to orient the outlet, whereas the assembly limitation describes "the duct element being [rotatably] adjustable around the guiding cover about the second axis at the first base so as to *alter the orientation of the outlet.*'" Appx121-122.

The ALJ also correctly noted that the distinct operations involving the "'blower' and the 'assembly,' i.e., 'being rotatable' and 'for adjusting the blower,' respectively, are accomplished over distinctly recited axes—a 'first axis' (about which the blower rotates) and a 'second axis' (about which the duct element rotates . . . .)." Appx122. The ALJ also analyzed the dependent claims, noting that they too support his construction that provides meaning to the two distinct types of rotation, about two distinctly claimed axes. Appx122-123.

The Commission supplemented the ALJ's analysis regarding the claim text's support for his construction, in the context of providing a detailed rejection of Dometic's various arguments that asserted error in the ALJ's analysis. Appx39-59. The Commission noted the legal presumption that the claims' listing of two distinct axes and two distinct elements rotating about those axes requires "separate and distinct physical structure[.]" Appx46-47 and n.11 (citing *Becton, Dickinson & Co. v. Tyco Healthcare Gr., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) and *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024)).

In seeking to demonstrate error in the ALJ's and Commission's analysis of the claim language, Dometic makes two flawed arguments. First, Dometic argues that the axes can be spatially identical, which is part of the Commission's construction. Dometic Br. at 53. That argument has little or nothing to do with whether a distinct type of rotation about each axis is required. Dometic's second argument, that the blower and duct element can rotate when coupled together, also fails. *See id.* Indeed, Dometic's argument proves the point that interpreting the first axis limitation to be satisfied by the rotation of the duct element about the guiding cover effectively reads that limitation out of the claim.

By analogy, claim 1's reference to rotation about two different axes—the axis about which the blower blades rotate and the axis about which the assembly rotates—logically requires that the blades be rotatable in a manner different than

rotation of the blower by virtue of being connected to the rotatable duct element. *See* Appx111-112 (comparing the axis limitations of claims 1 and 18). Likewise, claim 18's two limitations covering rotation of distinct components about distinct axes require more than merely one type of rotation by connected components. Dometic's efforts to rebut the presumption therefore fail, which is itself fatal to its appeal regarding claims 18-22.

### 2. The Prosecution History Supports the Commission's Construction

The ALJ and the Commission both explained that the prosecution history supports interpreting the two separate rotation/axis limitations to require two distinct types of rotation. Appx126; Appx46. In particular, the ALJ and the Commission noted that original claim 72, which became allowed claim 18, was amended by Examiner's amendment to change the original claim language from permitting only the blower to rotate about ***an axis*** to (1) permitting the blower to rotate about a ***first axis*** and (2) adding the "assembly" limitation, which requires rotation of the duct element around the guiding cover about a ***second axis***. *See id.* As the Commission succinctly concluded: "Dometic's proposed construction . . . reverts claim 18's first and second axes terms back to the unallowable pre-Examiner amendment version of the term, an axis." Appx46.

Dometic's assertion that the Commission's conclusion was incorrect cites only its own new, self-serving argument that the change in claim language from

requiring rotation about an axis to requiring two types of rotation about two axes merely "refer[s] to the same manner of rotation when viewed from two different perspectives . . . ." Dometic Br. at 54 (citing Br. § III.B). In support of that argument, Dometic does not cite any portion of the prosecution history, nor any support in the specification, but rather cites only its own Statement of the Case. *Id.* at 54-55. Dometic's citation to its own argument fails entirely to demonstrate that the amendment related only (or at all) to the perspective from which one views the two types of claimed rotation.

Dometic then seemingly seeks to limit the effect of the amendment to what Dometic believes rendered the claim allowable, the assembly, rather than give meaning to the added mode of rotation.[5] Dometic Br. at 56. Dometic provides no case law support for its argument that the claim should be interpreted in a manner that ignores the amendment made in favor of a narrower amendment that might have rendered the claim patentable at the time of prosecution. *See id.* The FID, in rejecting similar arguments below, noted that a claim "must be construed 'as written, not as the patentees wish they had written it.'" Appx128-129 (providing a "redline" of claim as Dometic argued it should be interpreted).

---

[5] It bears noting that the "assembly" was perceived as novel because Dometic failed to disclose its own Vector Compact product, which the ALJ and Commission determined included the claimed assembly.

### 3. The Specification Supports the Commission's Construction

The ALJ and Commission detailed the ample support in the '351 patent specification for interpreting claim 18 to require two different types of rotation about two distinct axes: (1) rotation of the duct element around the guiding cover about the second axis, and (2) rotation of the blower about the first axis. Appx123-126; Appx49. The ALJ noted that the parties agree regarding the rotation in point (1) above, the second axis/assembly limitations, refers to rotation of the duct element around the guiding cover to change the orientation of the blower outlet. Appx124.

Regarding the rotation in point (2), rotation of the blower about the first axis, in their analysis of the specification, both the ALJ and the Commission cited the specification's explanation that the blower could be oriented in different positions *relative to the duct element*. Appx124; Appx31-35, Appx49. The Commission, in summarizing the ALJ's analysis, quoted the specification, which provides that the height of the air conditioner can be varied by rotating the blower with respect to the non-concentric duct element:

> ***The overall height of the air conditioner 1 with the rotatable blower 2 will change depending on how the blower 2 is fastened in relation to the duct element 184.*** Therefore, ***the maximum height of the air conditioner 1 can be restricted by adjusting the orientation in which the blower is fastened to the duct element 184***.

Appx32 (quoting Appx332). The ALJ and Commission also cited and reproduced pictures from the specification which showed how the blower could be fastened in different orientations, which, naturally, alter the orientation of the outlet:



FIG. 24A



FIG. 24B



FIG. 25

Appx125-126; Appx33-34.

In an attempt to avoid that explicit disclosure describing rotation of the blower relative to the first axis (the blower-side end of the duct element), Dometic simply repeats its argument that the blower and duct element can be fastened together, and the blower outlet changes orientation as the duct element rotates around the guiding cover (i.e., about the second axis, the evaporator-side end of the duct element). Dometic Br. at 59-62.

Dometic's argument entirely ignores the specification's disclosure regarding a user's ability to orient the blower in different ways with respect to the duct element by rotating the blower. *See id.* In so doing, Dometic's Brief does little more than point to the patent's description of the claimed rotation around the guiding cover and about the second axis, arguing that it satisfies both requirements. That separate type of rotation, when considered in the context of the patent's

explicit disclosure of rotation of the blower itself with respect to the duct element, about the first axis, serves only to highlight the support in the specification for the Commission's construction.

#### 4. Inventor Testimony Supports the Commission's Construction

As the Commission explained in its opinion, which supplemented the ALJ's analysis in the FID, named inventor and Dometic's corporate witness on technical issues, Ronald Pabisz, testified that the shape of the duct element, as shown in Figure 24, was the "crux" of the patent in that it permitted two types of rotation about two axes:

> [t]he shape as it's shown in page – Figure[] 24 is the real – the crux of the patent here in having a ring that allowed you to have ***two axes*** within the same ring; ***an axis for the blow[er] rotation*** *and* ***an axis for the rotation relative to the shroud***[] . . . It's the ***ability for it to have two rotations of axes that's novel***.

Appx55-56 (citing Appx36213-36214). At his deposition, Mr. Pabisz, at the examining attorney's request, marked the patent figure with the two axes of rotation that he was referring to, making clear that the blower could rotate about the smaller axis (the center of the circular hole where the blower connects to the duct element) *and* the duct element could rotate about the larger axis (the center of the circular hole where the duct element connects to the guiding cover, or "shroud"):




FIG. 24B

Appx37963; *see also* Appx56 (reproducing same image).

Dometic dismisses this testimony from the named inventor, who was identified as a corporate witness on technical topics, on the basis that the Commission "distorts and takes out of context" Mr. Pabisz's testimony. Dometic Br. at 71. But Dometic fails to provide any support or basis for its accusation that the Commission distorted Mr. Pabisz's testimony, which clearly indicated two types of rotation with respect to two axes. *See id.* Dometic also suggests that the testimony should be ignored because it "referred to . . . an unclaimed structural feature (the shroud)[.]" This argument fails; in fact, Mr. Pabisz's testimony confirms that the allegedly novel "guiding cover" can equally be referred to as a

"shroud[,]" because the duct element depicted above and annotated by Mr. Pabisz as rotating around the shroud is the element the parties agree rotates around the guiding cover. *See* Br. at 71 (depicting rotation around the guiding cover).

Regarding the suggestion that the testimony should not be credited because it was not presented at the hearing, the testimony was admitted into evidence at the hearing, and Dometic did not present any additional testimony to demonstrate any alleged "distortion" or "context" for that corporate deposition testimony at the evidentiary hearing. *See* Dometic Br. at 71 (asserting the Commission "distort[ed], and [took] out of context" Mr. Pabisz's testimony). Dometic's remaining argument, that the testimony cannot negate the meaning of the claim, is entirely circular. Although Respondents are mindful of extrinsic evidence's generally lower value as compared to intrinsic evidence, Mr. Pabisz's testimony goes directly to the issue on appeal, which is whether a person of skill in the art like Mr. Pabisz (one of the named inventors on the patent), would understand claims 18-22 to require two distinct axes of rotation. His testimony is therefore highly valuable, and it confirms that the ALJ correctly decided the issue.

#### 5. Dometic's Construction Would Result in the Claims Being Invalid Over Dometic's Own Prior Products

Although there is overwhelming support for the ALJ's and Commission's construction of the "axis" limitations, this Court's canon of construction that "[c]laims should be so construed, if possible, as to sustain their validity" provides

further support for the adopted construction. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999). Though the Commission took no position on the ALJ's validity findings, the ALJ found that claims 18, 19, and 20 were obvious in view of the Vector Compact, in combination with secondary references, under Dometic's construction. Appx168. The ALJ further found that the Vector Compact's predecessor product, the "Vector Rotary," included *all* elements of claims 18-20 "except the axis and directional limitations" (the ALJ's term for the two "axis" limitations, *see* Appx130), if the "directional limitation could be satisfied by rotating the duct element around the guiding cover." Appx163-166; *see also* Dometic Br. at 18-19 (conceding that the predecessor Vector Rotary had increased rotational ability than its successor the Vector Compact).

The ALJ, therefore, correctly found that adopting Dometic's construction would result in the claims being anticipated and obvious over two of Dometic's own predecessor products, neither of which were disclosed to the Patent Office. To avoid that anomalous result, to the extent there is any ambiguity regarding whether the ALJ's and Commission's construction were correct, that ambiguity should be resolved in favor of the validity of the claims, which necessitates affirmance of the Commission's construction.

### 6. Dometic's Arguments Fail to Demonstrate Any Error by the Commission or ALJ

As it did below, Dometic makes a number of additional arguments in search of an error by the ALJ and Commission, arguing that (1) the Commission relied on figures to limit the claims to a particular structure; and/or (2) violated the doctrine of claim differentiation. Neither argument overcomes the presumption that the claims require the two distinct types of rotation described in the patent. Indeed, as discussed below, both arguments suffer logical and legal flaws that warrant their disregard.

First, Dometic's argument that the Commission's citation to the '351 patent's drawings "limit[ed] the scope of the Claims to said figures" fails for the simple reason that the Commission did not limit the claims in a manner that required the features being discussed—i.e., evenly spaced holes that allowed for rotation of the blower with respect to the duct element. *See* Dometic Br. at 63; Appx50-51. As the Commission explained in its opinion, the ALJ did not so limit the claims; rather, the ALJ properly analyzed the '351 patent's specification, in conjunction with the drawings included therein, to arrive at the conclusion (undisputed by Dometic) that the '351 patent describes and depicts *a means* by which rotation of the blower about the claimed first axis could be achieved. Appx124-125; Appx50-51. Dometic's argument therefore fails to demonstrate any error in the ALJ's or Commission's analysis.

Dometic's argument that the Commission's construction violates the doctrine of claim differentiation, similarly, fails. "'[C]laim differentiation' refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). Dometic does not argue that the Commission construed independent Claim 18 to require the additional limitation added by dependent Claim 22 ("includ[ing] a clamp element for maintaining the blower oriented with respect to the main body, and wherein only loosening of the clamp element is necessary to change orientation of the blower"). Appx52. Accordingly, Dometic's claim-differentiation argument fails.

The Commission considered a similar argument below and rejected Dometic's claim that dependent claim 22's reference to one means of blower adjustment (by means of loosening the clamp element to permit rotation of the duct element about the claimed second axis) served to eliminate the separately claimed rotation of the blower about the claimed first axis. Appx52-53. Claim 22 does not, and cannot, eliminate claim 18's requirement that the blower rotate with respect to the first axis, and is therefore not narrower than claim 18, from which it depends.

### C. The Domestic Industry Product's Blower Does Not Rotate About the Identified First Axis When the Duct Element Rotates Around the Guiding Cover

In addition to failing to demonstrate error in the Commission's construction of the axis limitations, Dometic's appeal fails for the independent reason that, even if its claim construction arguments were adopted, the Domestic Industry Product's blower does not rotate about the claimed first axis (where the duct element connects to the blower) when the duct element to which the blower is coupled rotates about the claimed second axis (where the duct element connects to the guiding cover). Rather, due to the shape of its duct element, which is similar to the duct element depicted in the '351 patent, when the duct element slidingly rotates about the claimed second axis (where the duct element connects to the guiding cover), the blower coupled to the duct element orbits or translates about that same second axis, as opposed to rotating about the claimed first axis.




FIG. 25

Appx320 (rotated). The above picture demonstrates that, even if Dometic were correct that the same rotation about the same axis could satisfy the two separate axis limitations, Dometic's Domestic Industry Product does not rotate the blower about the claimed first axis when the duct element rotates about the claimed second axis. *See* Appx115-116 ("[Dometic] has consistently failed to identify two axes in either the Accused Products or the DI Products."). Instead, rotation of the blower about the claimed first axis can be achieved only by rotating the blower with respect to the duct element and its first axis.

### D. If Two Distinct Types of Rotation Are Not Required, the Claimed Axes Cannot Be Spatially Identical

The Commission's construction that the separately claimed rotation of the blower about the first axis must be achieved by something other than the exact

rotation claimed in the second axis limitations, i.e., rotation of the duct element around the guiding cover about the second axis, avoided rendering the first- and second-axis limitations of the claims superfluous. *See* Appx128-129 ("redlined" version of the claim if construed to require only one means of rotation about one axis); *see also Wasica Finance GMBH v. Continental Auto. Sys. Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) ("Construing 'bit sequence' to allow for an empty, zero-bit sequence would effectively remove the 'first bit sequence,' 'second or third bit sequence,' and 'fourth and final bit sequence' limitations from the claim, as it would make them optional or potentially nonexistent.").

If the Court were to agree with Dometic that a single type of rotation (i.e., rotation of the duct element and the blower that is attached to it) can satisfy the two axis limitations, and if the Court were to conclude that the blower "orbiting" the second axis satisfies the claim's requirement that the blower rotate with respect to the first axis, a construction that the axes cannot be spatially identical is necessary to avoid rendering the claims superfluous. Such a construction would be consistent with the preferred embodiment disclosed in the patent, which had a duct element with offset axes that allowed for the blower to be oriented in different locations with respect to the claimed second axis. *See* Appx319-320.

Such a construction would result in a finding of non-infringement by the accused products.

### E. Reversal of the Commission's Factual Finding that Dometic's Products' Duct Element Is "Cylindrical" Provides an Alternative Basis for Affirmance

As summarized above, the ALJ adopted Dometic's proposed plain-meaning construction of the components that comprise the "assembly" limitation, including the "cylindrical duct element." Appx3771-3772 ("Because the rest of the claim language describes the required elements of the assembly, there presently appears to be no need to articulate that plain and ordinary meaning[.]"). The ALJ and Commission, applying that construction, found that Dometic's domestic industry products' duct element satisfies the "cylindrical" limitation despite acknowledging that the domestic industry products' duct elements are "shaped like the same asymmetric truncated cones found in one of the two embodiments disclosed in the 351 patent." Appx149-150; Appx78-79.

Under the plain-meaning construction advocated for by Dometic, which is not the subject of any party's appeal, the finding that Dometic's products' duct element is "cylindrical" constitutes a factual error. *See* Appx27631-27635. The ALJ and Commission found the domestic industry products' duct element, which has curved sides, with circular ends that are non-congruent and that have a different center-point, to be "cylindrical" according to the plain and ordinary meaning of that term. Appx75-76, Appx78-79.

The plain meaning of the term cylindrical, as confirmed by dictionaries and mathematical equations that are readily available to the public and a person of ordinary skill in the art, requires straight sides and congruent, circular ends. Dometic's domestic industry product's duct element has neither, and its duct element is, therefore, not "cylindrical." *See id.* This constitutes an additional, independent basis for affirming the Commission's final determination of no violation on the basis of Dometic's failure to show that its domestic industry products are covered by the '351 patent claims.

## VII. CONCLUSION

For the reasons detailed above, the Commission's final determination of no violation should be affirmed in its entirety.

Date: February 7, 2025

Respectfully submitted,

/s/ Paul M. Bartkowski

Paul M. Bartkowski
Thomas R. Burns, Jr.
BARTKOWSKI PLLC
6803 Whittier Ave., Suite 200A
McLean, VA 22101
Telephone: (571) 533-3581
E-Mail: pbartkowski@bartkowskipllc.com
tburns@bartkowskipllc.com

*Counsel for Citimarine, L.L.C.; Mabru Power Systems, Inc.; Shanghai Hopewell Industrial Co., Ltd.; and Shanghai Hehe Industrial Co., Ltd.*

/s/ Mark D. Bowen
Mark D. Bowen
Malin Haley DiMaggio & Bowen, PA
4901 NW 17th Way, Suite 308
Fort Lauderdale, FL 33309
Telephone: (954) 763-3303
E-Mail: mdb@mhdpatents.com

*Counsel for Mabru Power Systems, Inc.*

/s/ Jason Xu
Jason Xu
RIMON, P.C.
1990 K Street NW, Suite 420
Washington, D.C. 20006
Telephone/Facsimile: (202) 470-2141
E-Mail: jason.xu@rimonlaw.com

*Counsel for Shanghai Hopewell Industrial Co., Ltd. and Shanghai Hehe Industrial Co., Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1796

**Short Case Caption:** Dometic Corp. v. ITC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 11,895 words.

- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.

- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 02/07/2025

Signature: /s/ Paul M. Bartkowski

Name: Paul M. Bartkowski

Save for Filing