**Appeal No. 2024-1796**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**DOMETIC CORP., and DOMETIC SWEDEN AB,**
*Appellants,*

v.

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

and

**CITIMARINE L.L.C., MABRU POWER SYTEMS, INC., SHANGHAI HOPEWELL INDUSTRIAL CO., LTD., and SHANGHAI HEHE INDUSTRIAL CO., LTD.,**
*Intervenors*.

---

Appeal from the United States International Trade Commission

in Investigation No. 337-TA-1346

---

# BRIEF OF APPELLEE INTERNATIONAL TRADE COMMISSION

**DOMINIC L. BIANCHI**
General Counsel
Telephone (202) 205-3061

**AMANDA P. FISHEROW**
Assistant General Counsel
Telephone (202) 205-2737

**NAMO KIM**
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone (202) 205-3459
namo.kim@usitc.gov

Dated: February 7, 2025

## U.S. PATENT NO. 8,056,351 CLAIMS AT ISSUE

(limitations at issue bolded)

### Claim 1

1. An air conditioning device for a nautical vehicle including:

a main body; and

a blower including an inlet and an outlet, the inlet being in air communication with the main body,

the blower further including blades rotating therewithin about a first axis, and

an assembly for adjusting the blower with respect to the main body about a second axis so as to alter an orientation of the outlet,

the assembly including ***a guiding cover*** and a cylindrical duct element for maintaining the main body and the blower in air communication with one another,

the duct element having a first base and a second base, and coupled to the blower at the second base, the first base of the duct element dimensioned to correspondingly fit the guiding cover, and

the duct element being rotatably adjustable around the guiding cover about the second axis at the first base so as to alter the orientation of the outlet.

### Claim 18

18. An air conditioning device for a nautical vehicle including:

a main body; and

a blower including an inlet and an outlet, the inlet being in air communication with the main body,

***the blower being rotatable about [a] first axis so that the outlet can be oriented toward a first direct[i]on and a second direction***, and ***the first and second directions point to substantially different lateral sides of the main body***, and

an assembly for adjusting the blower with respect to the main body about a second axis so as to alter an orientation of the outlet, the assembly including a guiding cover and a cyli[n]drical duct element for maintaining the main body and the blower in air communication with one another,

the duct element having a first base and a second base, and coupled to the blower at the second base, the first base of the duct element dimensioned to correspondingly fit the guiding cover, and

the duct element being rotat[a]bly adjustable around the guiding cover about the second axis at the first base so as to alter the orientation of the outlet.

**Claim 19**

19. The air conditioning device of claim 18, wherein the first direction and the second direction point to substantially opposite directions.

**Claim 20**

20. The air conditioning device of claim 19, wherein the blower can be rotated without interference from a compressor, an evaporator or a condenser.

**Claim 21**

21. The air conditioning device of claim 18, wherein the blower is rotatable by more than 270 degrees.

**Claim 22**

22. The air conditioning device of claim 18, wherein the air conditioning device further includes

a clamp element for maintaining the blower oriented with respect to the main body, and

wherein only loosening of the clamp element is necessary to change orientation of the blower.

Appx332-333 (12:52-13:3, 14:4-33).

# TABLE OF CONTENTS

**U.S. PATENT NO. 8,056,351 CLAIMS AT ISSUE** .......... ii

**TABLE OF AUTHORITIES** .......... viii

**STATEMENT OF RELATED CASES** .......... x

**INTRODUCTION** .......... 1

**STATEMENT OF THE ISSUES** .......... 3

**STATEMENT OF THE CASE** .......... 4

I. The ’351 Patent and Technology at Issue .......... 4

A. Two Modes of Rotation for the “Blower” .......... 4

B. The Inventor and Dometic’s Corporate Representative Testified that the “Crux” of the ’351 Patent Is Two Modes of Rotation .......... 8

C. Prosecution History .......... 9

1. Claim 1 (Application Claim 54) .......... 9

2. Claim 18 (Application Claim 72) .......... 10

D. The “Guiding Cover” .......... 11

II. The Proceedings Below .......... 12

A. Claims 1-2, 4-5, and 7: Invalid as Anticipated by Vector Compact on Summary Determination .......... 12

B. Claims 18-22: Not Infringed and Not Practiced by the Domestic Industry Products .......... 15

**SUMMARY OF THE ARGUMENT** .......... 18

**ARGUMENT** .......... 21

I. Standard of Review .......... 21

**TABLE OF CONTENTS (cont'd)**

II. The Commission Properly Granted Summary Determination that Vector Compact Anticipates Claims 1-2, 4-5, and 7 ....................22

A. The Commission Determined that Claims 1-2, 4-5, and 7 Are Anticipated Under Dometic's Own Construction of "Guiding Cover" ....................24

1. The ALJ Correctly Applied Dometic's Own Construction of "Guiding Cover" ....................24

2. Vector Compact's "Guiding Cover" Is Precisely What Dometic's Construction of the "Guiding Cover" Requires ....................26

3. The '351 Patent Does Not Require that the "Main Body" Must Be Separate From the "Assembly" and the "Guiding Cover" ....................29

B. There Is No Genuine Issue of Material Fact on the Features of Vector Compact ....................32

C. The Prosecution History Establishes that the Claims Were Amended to Overcome Dodge, Not Vector Compact ....................35

III. The Commission Correctly Construed the Axis and Directional Limitations of Claims 18-22 ....................36

A. The Claim Language Requiring Two Different Rotations by Two Different Structures in Two Different Axes Supports the Commission's Construction ....................38

B. The Specification Supports Two Modes of Rotation for the "Blower" ....................39

1. The Specification Discloses Two Modes of Rotation to Solve the Problem of Installing an Air Conditioner in Limited Space ....................40

**TABLE OF CONTENTS (cont'd)**


2. The Specification Discloses Two Distinct Axes with Two Distinct Modes of Rotation Even When the Two Axes Are Colinear ....45

3. The Specification Supports the Presumption that the "First Axis" Rotation and "Second Axis" Rotation Require Two Modes of Rotation ....48

C. The Prosecution History Supports Two Modes of Rotation of the "Blower" ....50

1. The Examiner's Amendment of "An Axis" to "A First Axis" and "A Second Axis" Overcame the Prior Art ....50

2. Dometic's Proposed Construction Reverts Claim 18's First Axis and Second Axis Terms Back to a Pre-Examiner Amendment Version of the Term "An Axis" ....52

D. Dometic's Proposed Construction Reads the Axis Limitation Out of the Claim and Renders it Void, Meaningless, or Superfluous ....53

E. The Extrinsic Evidence Supports Two Modes of Rotation for the "Blower" ....55

1. Dometic's Corporate Representative and a Named Inventor Testified that the "Crux" of the Patent Is the "Two Rotations of Axes" ....55

2. Dometic's Reading of Intrinsic Evidence Is Contradicted by the Testimony of Dometic's Own Corporate Representative and a Named Inventor ....56

**TABLE OF CONTENTS (cont'd)**


F. The Commission's Construction Does Not Require Disassembly ....................59

1. The Commission Properly Analyzed the Specification and the Drawings to Find that Apertures Are Used for Coupling/De-Coupling the "Duct Element" and "Blower" ....................59

2. The Terms "Coupled" and "Air Communication" Do Not Prevent Rotation or Adjustment of the Blower with Respect to the Duct Element ....................62

G. The Dependent Claims Support the Commission's Construction ....................65

1. Dependent Claims 20-21 Support the Commission's Construction ....................65

2. The Commission's Construction Is Supported by the Doctrine of Claim Differentiation ....................66

**CONCLUSION ....................69**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
764 F.3d 1366 (Fed. Cir. 2014) ....................58

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................21, 33, 34

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
216 F.3d 1042 (Fed. Cir. 2000) ....................21, 34

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................49

*Finnigan Corp. v. ITC*,
180 F.3d 1354 (Fed. Cir. 1999) ....................24, 43, 48

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ....................49

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................24

*Hazani v. ITC*,
126 F.3d 1473 (Fed. Cir. 1997) ....................21

*Hill-Rom Co., Inc. v. Kinetic Concepts*,
209 F.3d 1337 (Fed. Cir. 2000) ....................29

*Honeywell Int'l, Inc. v. ITC*,
341 F.3d 1332 (Fed. Cir. 2003) ....................21

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) ....................54

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999) ....................62, 63

*In re Katz Interactive Call Proc. Patent*,
639 F.3d 1303 (Fed. Cir. 2011) ....................44, 45, 66

*Mars Inc. v. H.J. Heinz Co.*,
377 F.3d 1369 (Fed. Cir. 2004) ....................69

**TABLE OF AUTHORITIES (cont'd)**

**Cases (cont'd)** **Page(s)**

*Microsoft Corp. v. Biscotti, Inc.*,
878 F.3d 1052 (Fed. Cir. 2017) ....................21

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
429 F.3d 1364 (Fed. Cir.2005) ....................45, 66

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................40

*Renishaw PLC v. Marposs Societa' Per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998) ....................40, 45, 58, 66

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)....................21

*Tex. Instruments v. ITC*,
988 F.2d 1165 (Fed. Cir. 1993) ....................54

*Univ. of Mass. v. L'Oréal S.A.*,
36 F.4th 1374 (Fed. Cir. 2022) ....................51

*Voice Techs. Grp., Inc. v. VMC Sys., Inc.*,
164 F.3d 605 (Fed. Cir. 1999) ....................57, 58

**Statutes**

5 U.S.C. § 706....................21

19 U.S.C. § 1337....................1

35 U.S.C. § 102(b) ....................12

**Regulations**

19 C.F.R. § 210.42(h) ....................12

19 C.F.R. § 210.45(c)....................12

19 C.F.R. § 210.43(b)(2)....................24

## STATEMENT OF RELATED CASES

Appellee U.S. Internation Trade Commission ("Commission") is unaware of any related case that requires disclosure under Federal Circuit Rule 47.5.

## INTRODUCTION

The Commission found no violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("section 337"), based on the findings that (1) claims 1-2, 4-5, and 7 of U.S. Patent No. 8,056,351 ("the '351 patent") are invalid as anticipated, and (2) claims 18-22 of the '351 patent are not infringed and the technical prong of the domestic industry requirement is not met.

On appeal, Appellants seek to construe claims 1-2, 4-5, and 7 narrowly to uphold validity, and construe claims 18-22 broadly to find infringement and domestic industry. Consequently, Appellants repeatedly (1) contradict their own statements made before the Commission, (2) misread and ignore the intrinsic evidence supporting the Commission's findings, and (3) disregard the testimony of their own corporate representative and a named inventor of the '351 patent, Mr. Pabisz.

For claims 1-2, 4-5, and 7, Appellants mainly dispute the Commission's finding that the prior art Vector Compact discloses the claimed "guiding cover." The Commission adopted Appellants' own construction of "guiding cover," and determined that this limitation is disclosed by the prior art. Appellants even acknowledged before the Commission that their own construction was adopted as proposed. Yet, Appellants argue for the first time on appeal that the Commission erred in construing "guiding cover," and now argue that the claimed air

conditioner's "main body" must be separate from the "assembly" and the "guiding cover." In doing so, Appellants simply ignore the specification's disclosure that the "main body" ***includes*** the "assembly" and the "guiding cover."

For claims 18-22, Appellants mainly dispute the Commission's construction of the "first axis" rotation and the "second axis" rotation as requiring two modes of rotation for the blower—one mode of rotation about the "***first axis***" and another mode of rotation about the "***second axis***." The claims were amended during prosecution to recite the "first axis" and "second axis" rotations to overcome the prior art of record. Appellants improperly attempt to construe the claims broadly to require only one mode of rotation in order to encompass the accused products and the domestic industry products. Appellants' broad reading ignores the prosecution history, and is contradicted by the claim's plain language and the specification's clear disclosure of two modes of rotation for the blower. The specification's disclosure is further supported by Mr. Pabisz's testimony describing the "crux" of the '351 patent as having two modes of rotation on two different axes. The Commission's construction is therefore supported by the claim language, specification, prosecution history, and the extrinsic record.

## STATEMENT OF THE ISSUES

The Commission submits that the issues on appeal are more properly framed as follows:

1. Whether the Commission properly granted summary determination that claims 1-2, 4-5, and 7 of the ’351 patent are anticipated by Vector Compact, when the Commission considered and applied Appellants’ own construction.

2. Whether the Commission correctly construed, in light of the intrinsic and extrinsic evidence, “the blower being rotatable about ***[a] first axis*** so that the outlet can be oriented toward a first direct[i]on and a second direction” (“axis limitation”) in claims 18-22 to require a different type of rotation from “an assembly for adjusting the blower . . . about ***a second axis***,” such that the blower has two modes of rotation—one mode of rotation about the “***first axis***” and another mode of rotation about the “***second axis***.”

3. Whether the Commission correctly construed “the first and second directions point to substantially different lateral sides of the main body” (“directional limitation”) in claims 18-22 to require “the first and second directions” to result from the blower’s rotation about the first axis.[1]

---

[1] The parties’ “arguments concerning the ‘axis limitation’ apply equally to the ‘directional limitation’ because the Commission’s construction for that latter depends on whether the ‘axis limitation’ requires” a rotation that is separate from

## STATEMENT OF THE CASE

To present an accurate description of the proceedings below, the Commission provides its own statement of the case.

Appellants-Complainants Dometic Corp. and Dometic Sweden AB (together, "Dometic") accused four respondents, CitiMarine, L.L.C.; Mabru Power Systems, Inc.; Shanghai Hopewell Industrial Co. Ltd.; and Shanghai Hehe Industrial Co. Ltd. (collectively, "Intervenors" or "Respondents") of violating section 337 based on infringement of certain claims of the '351 patent. Appx1536-1537.

### I. The '351 Patent and Technology at Issue

The '351 patent is titled "blower for marine air conditioner." Appx296. The patent recognizes a problem in the art, *i.e.*, "[a]n air conditioning system equipped with features that allow for easy installation is necessary for situations where it must be installed" in nautical vehicles with limited space. Appx327 (1:25-28).

#### A. Two Modes of Rotation for the "Blower"

As a solution, the '351 patent claims rotation or adjustment of the air conditioner's "blower" for easy installation, so the outlet of the blower 2 can point

---

the assembly. Appellants' Opening Brief ("Br.") at 5, n.2. The Commission correctly construed the axis limitation, *infra* Argument § III, and it follows that the directional limitation is satisfied by the blower's rotation about the first axis, not the assembly. Appx38-39.

in different directions, as demonstrated in the figures below. Appx332-333 (cls. 1 and 18).




FIG. 1



FIG. 29

Appx297 (annotated); Appx324.

As shown below in Figure 22, one way to rotate the blower is via an "assembly" that includes a "guiding cover" and a "cylindrical duct element" (shown in yellow). Appx332-333 (11:64-67, cls. 1, 18). The duct element of the assembly is rotatably adjustable around the guiding cover, and the blower (shown in green), attached to one end of the duct element, rotates together as the duct element rotates. Appx332 (11:64-67).




FIG. 22

Appx317 (annotated). Thereby, the blower is adjusted "about a second axis" via the assembly as recited in claims 1 and 18. Appx332-333 (11:64-67, cls. 1, 18). For this rotation, the specification discloses that "[t]he orientation of the outlet 218 of the blower can be altered simply by loosening the clamp element 186, rotating the duct element 184 to the desired orientation and tightening the clamp element 186." Appx332 (11:64-67).

However, as the blower is rotated, the specification recognizes a problem that "the outlet 218 of the blower 2 [] substantially ***increase[s] the height*** of the air conditioner 1 when the outlet 218 is located near the top of the air conditioner 1."

Appx332 (12:6-24).[2] This height increase can make the installation difficult in limited space. Appx327 (1:19-28); Appx332 (12:6-24). The specification describes another way to rotate the blower (*i.e.*, a second mode of rotation) to solve this height problem:

> The overall height of the air conditioner 1 with the rotatable blower 2 will change ***depending on how the blower 2 is fastened in relation to the duct element 184***. Therefore, the maximum height of an air conditioner 1 can be restricted by ***adjusting [or rotating]***[3] ***the orientation in which the blower 2 is fastened to the duct element 184***.

Appx332 (12:19-24).[4]

To fasten the blower to the duct element in different orientations, the specification discloses that "apertures" 210, illustrated in Figure 24, are used "for coupling the duct element 184 onto the blower 2." Appx332 (11:1-3); Appx319. The adjusting of the orientation in which the blower is fastened to the duct element

---

[2] Emphasis is added unless stated otherwise.

[3] Dometic acknowledges that "the intrinsic evidence [of the '351 patent] uses ***rotation and adjustment synonymously***—*i.e.*, these terms hardly suggest two different operations." Br. at 68.

[4] Dometic argues that "adjusting [or rotating] the orientation in which the blower 2 is fastened to the duct element 184" to change the air conditioner's height is "***not rotation*** as contemplated" by the claims and the specification. Br. at 26, 62.

via the apertures is an exemplary embodiment of how the blower is rotatable "about a first axis" in claim 18. Appx332-333 (11:1-3, 12:6-24, cl. 18).

Therefore, the '351 patent discloses ***two modes of rotation for the blower*** to allow for easy installation in limited space because (1) the blower can rotate via the assembly, Appx332 (11:64-67); and (2) the air conditioner's overall height can be changed by adjusting the orientation in which the blower is fastened to the duct element, Appx332 (12:6-24).

### B. The Inventor and Dometic's Corporate Representative Testified that the "Crux" of the '351 Patent Is Two Modes of Rotation

Mr. Pabisz, a named inventor of the '351 patent and Dometic's corporate representative testified that the "***crux***" of the '351 patent is "the ability for it to have ***two rotations of axes that's novel***." Appx36046-36066 (17:8-37:20); Appx36213-36214 (184:9-185:14). He testified that the challenges of inventing the subject matter of the '351 patent were keeping the same dimensions of the air conditioner and "be[ing] able to turn this blower from one direction to the other" and "keep[ing] the height" of the air conditioner as "you try to turn the blower from one direction to the other." Appx36110-36111 (81:17-82:15).

Mr. Pabisz explained:

> The shape as it's shown in page—Figures 24 is the real—the ***crux*** of the patent here in having a ring that allowed you to have ***two axes*** within the same ring; ***an axis for the blow[er] rotation*** *and* ***an axis for the rotation relative to***

> ***the shroud*** . . . It's the ***ability for it to have two rotations of axes that's novel***.

Appx36213-36214 (184:9-185:14). He identified the two axes for the "two rotations" by marking an axis for "Blower" and another axis for "Shroud"[5] in Figure 24B. Appx37963 (Fig. 24B annotated by Mr. Pabisz).

Consistent with the '351 patent specification, the Commission determined that Mr. Pabisz was referring to the duct element in Figure 24B as a "ring" allowing two modes of rotation: (1) the blower's rotation relative to the duct element about a first axis marked "Blower," and (2) the duct element's rotation relative to the main body about a second axis marked "Shroud" (*i.e.,* the cover of the air conditioner's main body). Appx55-59.

## C. Prosecution History

### 1. Claim 1 (Application Claim 54)

During prosecution of the '351 patent, the Examiner rejected then-pending claim 54, (now issued-claim 1) as anticipated by U.S. Patent No. 5,848,536 to Dodge et al. ("Dodge"). Appx35178. Dodge discloses changing the blower's orientation by "rotating the square mounting plate 34 supporting the blower

[5] The '351 patent specification identifies the "shroud" as the exterior components of the air conditioner that "houses the compressor, the evaporator and the condenser." Appx328-329 (4:43-49, 6:17-22).

housing 17 ninety degrees about an axis" and "reconnecting the square plate to the condenser/evaporator shroud 35 using the screws 33." Appx41672 (5:15-20).

To overcome Dodge, Dometic amended claim 54 by adding "an assembly for adjusting the blower with respect to the main body about a second axis so as to alter an orientation of the outlet . . . ." ("the assembly limitation").[6] Br. at 15.

#### 2. Claim 18 (Application Claim 72)

The Examiner also rejected then-pending claim 72 (now issued-claim 18) as anticipated by U.S. Patent No. 6,101,829 to Robinson ("Robinson"). Appx35179. In particular, the Examiner determined that Robinson discloses "the blower being rotatable about an axis." Appx35179.

In order to overcome Robinson, Dometic authorized an Examiner's amendment that amended claim 72 to change "the blower being rotatable about ***an axis***" to "***first axis***" and added "an assembly for adjusting the blower . . . about a ***second axis*** . . . ." Appx35228. The Examiner explained that the amendment placed the claim in condition for allowance because "[t]he prior art of record when consider as a whole, alone or in combination, neither anticipates nor renders obvious" claim 72. Appx35229-35232.

---

[6] The assembly limitation is also recited in claim 18.

### D. The "Guiding Cover"

Claims 1 and 18 recite "the assembly including a guiding cover and a cylindrical duct element . . . the duct element dimensioned to correspondingly fit the guiding cover, and the duct element being rotatably adjustable around the guiding cover about the second axis." Appx332-333 (cls. 1 and 18). As shown in Figure 22, the duct element is shaped to fit the guiding cover, and rotates around it. Appx317; Appx331 (10:34-37).

The specification describes that "[a]n air conditioning system for a nautical vehicle includes ***a main body including an assembly***," and "***[t]he assembly includes a guiding cover*** and a cylindrical duct element." Appx296 (Abstract). The specification also states that "the air conditioner 1 can largely be divided into a main body 4 and the blower 2," where "[t]he main body 4 comprises the drain pan 100 and what is mounted above it," which includes several components including the guiding cover. Appx296 (Abstract); Appx297; Appx332 (11:24-26). Therefore, the '351 patent contemplates a main body having an assembly that includes a guiding cover.

## II. The Proceedings Below[7]

### A. Claims 1-2, 4-5, and 7: Invalid as Anticipated by Vector Compact[8] on Summary Determination

On July 18, 2023, the ALJ issued an initial determination granting-in-part Intervenors' motion for summary determination, finding that Dometic's prior art product, Vector Compact, anticipates claims 1-2, 4-5, and 7 of the '351 patent. Appx211-244. The parties' dispute focused on the term "guiding cover." Appx223-232.

Before the ALJ, Dometic proposed a construction of the term "guiding cover," as a "fan plate," that "is a 'cover-like element' that includes a 'flat section with a circular opening for directing to the adjacent blower and has a cylindrical section extending from the opening.'" Appx228. The ALJ applied Dometic's own construction and determined that the "guiding cover" "is precisely what the Vector

[7] Unless indicated otherwise, the Commission affirmed and/or supplemented the relevant findings of the Administrative Law Judge ("ALJ"). Appx5; Appx190. Those findings have become those of the Commission. 19 C.F.R. §§ 210.42(h), 210.45(c). Except when necessary to distinguish the ALJ stage of proceedings from the Commission stage, we refer to the ALJ's findings as the Commission's own findings.

[8] Vector Compact is a marine air conditioner product sold in the United States by Dometic since the late 1990s. Appx219-220. It is undisputed that Vector Compact qualifies as prior art to the '351 patent at least under pre-AIA 35 U.S.C. § 102(b). Appx219-220.

Compact has" (*e.g.*, based on Vector Compact's structure, shown below). Appx228.




Appx227.

The ALJ rejected Dometic's argument that Vector Compact's flat section, which is labeled as "part of a larger housing (or shroud)," cannot be the guiding cover because "a shroud and a guiding cover are different structures." Appx229-231. The ALJ determined that such labeling makes no difference because Vector

Compact possesses the same embodiment of the guiding cover disclosed in the ’351 patent, and “[l]abelling the structure to which the guiding cover is attached a ‘shroud’ does not change the nature of the structure.” Appx229-231. The ALJ also noted that the patent identifies “the main body as the ‘drain pan 100 and what is mounted above it’ . . . which includes any shroud or shroud-like housing as well as other air conditioner components.” Appx231. The ALJ concluded:

> [T]here is nothing inconsistent about identifying most of the shroud as part of the main body and simultaneously identifying the flat section/circular opening/cylindrical protrusion part of the shroud as the guiding cover; nothing in the claim language requires that they be entirely separate structures.

Appx231.

The ALJ also determined that Vector Compact discloses the claimed “duct element” and noted that “Dometic does not expressly dispute the presence of the duct element.” Appx224. Therefore, the ALJ determined that Vector Compact includes “the assembly including a guiding cover and a cylindrical duct element” recited in claim 1. Appx232.

The Commission affirmed the ALJ’s summary determination with supplemental analysis to find that Dometic’s claim amendment during prosecution of the ’351 patent to overcome Dodge does not change the ALJ’s finding that Vector Compact anticipates the claims. Appx190-207.

### B. Claims 18-22: Not Infringed and Not Practiced by the Domestic Industry Products

On May 1, 2023, the ALJ issued a *Markman* Order construing the axis and directional limitations of claim 18. Appx3777-3784. During the *Markman* proceeding, Dometic argued that the two claimed axes may be "the same or different" and Intervenors argued that the two axes must be different. Appx3777; Appx2315-2317. The ALJ's construction found that the "first axis" and "second axis" limitations "need not be different," largely adopting Dometic's proposed construction, but left open the question of whether the limitations require two modes of rotation for the blower. Appx3781.

During the evidentiary hearing, the ALJ addressed the question of whether the "first axis" rotation and the "second axis" rotation require two modes of rotation for the blower and requested the parties to brief the issue. Appx129-131.

On December 8, 2023, the ALJ issued the final initial determination ("FID") finding no violation of section 337 had occurred. Appx85-183. In the FID, the ALJ determined that claim 18 requires two modes of rotation for the blower. Appx111-131. The ALJ's construction of the axis and directional limitations, affirmed by the Commission, are summarized below:

| **Disputed Limitations of Claim 18** | ***Markman* Order's Construction** | **Supplemental FID Construction** |
|---|---|---|
| **Axis Limitation:** "the blower being rotatable about [a] first axis so that the outlet can be oriented toward a first direct[i]on and a second direction" | "the blower can be rotated about a first axis so that the blower outlet can be oriented toward a first direction and toward a second direction' and the 'first axis' and the 'second axis' need not be different." Appx3781. | "The axis limitation is construed to require a different type of rotation separate from the assembly's adjustment/rotation, and involving a structural component that may be a part of, but is identifiably distinct from, the claimed portion of the 'assembly.'" Appx120. |
| **Directional Limitation:** "the first and second directions point to substantially different lateral sides of the main body" | "first and second directions point to substantially opposing sides of the main body with respect to a vertical plane." Appx3784. | "The directional limitation . . . is construed as 'said first and second directions resulting from rotation about said first axis point to substantially opposing sides of the main body with respect to a vertical plane.'" Appx131. |

The Commission affirmed the ALJ's construction with supplemental analysis to address Dometic's arguments, and to find that the extrinsic evidence (*i.e.*, testimony of Mr. Pabisz) also supported the ALJ's construction. Appx5; Appx55-59.

Dometic described all of the accused products and domestic industry products to have "their blowers affixed to their duct elements" thereby forming a unitary structure and allowing only one mode of rotation for the blower. Appx60-62; Appx64; Appx74-78. The Commission determined that none of the accused

products infringe asserted claims 18-22 because the accused products lack two modes of rotation for the blower required under the Commission's construction.[9] Appx60-62; Appx64. Similarly, the Commission determined that none of the domestic industry products practice claims 18-22 because the domestic industry products lack two modes of rotation.[10] Appx74-78. Therefore, the Commission found no violation of section 337 as to claims 18-22 of the '351 patent had occurred. Appx80.

---

[9] Claims 19-22 depend directly or indirectly from claim 18, and the Commission determined that those claims are not infringed by virtue of their dependency.

[10] The Commission determined that none of the domestic industry products practice claims 19-22 by virtue of their dependency to claim 18.

## SUMMARY OF THE ARGUMENT

Contrary to Dometic's arguments on appeal, the Commission properly granted summary determination that Vector Compact anticipates claims 1-2, 4-5, and 7 of the '351 patent under Dometic's ***own*** construction of "guiding cover." Moreover, Dometic does not dispute that Vector Compact has ***all*** of the required features of the "guiding cover" under its own construction.

Before the Commission, Dometic acknowledged that its own construction of "guiding cover" in claim 1 was adopted as proposed. Now, for the first time on appeal, Dometic argues that the Commission erred in construing "guiding cover" in an improper attempt to narrow its construction. Dometic's newly proposed construction of the "guiding cover" where the "main body" must be separate from the "assembly" and "guiding cover" is simply not supported by the claim's plain language and the intrinsic evidence. The specification expressly discloses that the assembly and guiding cover are part of the main body. Appx296 (Abstract) (disclosing "a main body ***including*** an assembly" and the guiding cover). Dometic ignores the intrinsic evidence in misreading the claims as categorically excluding the "main body" from the "assembly" and "guiding cover."

Similarly, Dometic ignores the record evidence to argue that Vector Compact cannot anticipate the claims simply because different prior art, Dodge, was overcome during prosecution. Dometic, without any support, argues that the

Dodge patent covers Vector Compact. However, Mr. Pabisz, Dometic's own corporate representative and the inventor of the '351 patent, explicitly testified that Vector Compact's relevant design is "totally different" from Dodge. No genuine issue of material fact existed in granting summary determination of anticipation and the Commission's finding of anticipation should be affirmed.

The Commission properly construed the "first axis" and the "second axis" rotations in claims 18-22 of the '351 patent to require two different modes of rotation for the blower. Dometic again ignores the intrinsic and extrinsic evidence to argue that the Commission's construction is wrong and that claim 18 only requires one mode of rotation. The overwhelming evidence establishes why Dometic is mistaken.

First, the plain language of claim 18 describes two different rotations by two different structures around two different axes. Yet, Dometic argues that claim 18 requires only one mode of rotation. There is also a presumption that the separately listed "first axis" and "second axis" limitations require two separate modes of rotation for the blower. Dometic has not rebutted this presumption.

Second, the specification discloses two modes of rotation for the blower to allow an air conditioner to be "installed in limited space." Appx327 (1:19-28); Appx332 (11:64-67, 12:6-24). In arguing that claim 18 only requires one mode of rotation of the blower, Dometic misunderstands the specification as disclosing a

single mode of rotation for the blower. Not only is Dometic's understanding of the specification wrong, but it is also contradicted by Mr. Pabisz, who testified that the "crux" of the '351 patent is "the ***ability for it to have two rotations of axes***." Appx36213-36214 (184:9-19, 185:5-14). He testified that two modes of rotation are needed to "keep the height" of the air conditioner as "you try to turn the blower from one direction to the other." Appx36110-36111 (81:17-82:15). This testimony is consistent with the plain language of the claims and the clear disclosure in the specification.

Lastly, claims 18-22 were amended during prosecution to overcome the prior art of record by changing "the blower being rotatable about ***an axis***" to "***first axis***," and adding the assembly limitation for adjusting the blower about a "***second axis***." This prosecution history establishes that the blower's rotation about "first axis" occurs over a different axis than the assembly's rotation about "second axis."

Under Dometic's proposed construction, requiring only one mode of rotation for the blower, the "first axis" rotation for the blower is subsumed into the assembly limitation for adjusting the blower about the "second axis," thereby reading the "first axis" limitation expressly out of the claim. Accordingly, the Commission's construction and related findings of non-infringement and no domestic industry should be affirmed.

## ARGUMENT

### I. Standard of Review

Commission determinations are reviewed under the Administrative Procedure Act. 5 U.S.C. § 706; *Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1338 (Fed. Cir. 2003). This Court reviews the Commission's legal determinations *de novo* and factual findings for substantial evidence. *Honeywell*, 341 F.3d at 1338.

"[A]nticipation is a question of fact subject to substantial evidence review." *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1068 (Fed. Cir. 2017). While claim construction is ultimately a question of law, subsidiary factual findings in connection with the claim construction are reviewed for substantial evidence. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321-22 (2015).

Summary determination is appropriate when there is no genuine issue of material fact. *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000); *Hazani v. ITC*, 126 F.3d 1473, 1477 (Fed. Cir. 1997). An expert's unsupported conclusions do not raise a genuine issue of material fact. *Arthur A. Collins*, 216 F.3d at 1046. "Factual disputes that are irrelevant or unnecessary will not be counted" in entering summary determination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court reviews the Commission's grant of summary determination *de novo*. *Hazani*, 126 F.3d at 1476.

## II. The Commission Properly Granted Summary Determination that Vector Compact Anticipates Claims 1-2, 4-5, and 7

The main dispute on appeal centers on a single limitation, "guiding cover," and whether the Commission's finding that Vector Compact anticipates claims 1-2, 4-5, and 7 of the '351 patent under Dometic's construction was proper. *See* Br. at 30-48.

The Commission, by affirming the ALJ's findings, adopted Dometic's own construction of "guiding cover" exactly as proposed: "a 'fan plate' that is a 'cover-like element' that includes a flat section with a circular opening for directing air to the adjacent blower and has a cylindrical section extending from the opening." Br. at 32; Appx202-203; Appx228. Contrary to Dometic's assertion, the Commission did not err in construing "guiding cover" by adopting and applying the exact construction proposed by Dometic. Appx202-203; Appx228.

The Commission's application of Dometic's construction resulted in the finding that Vector Compact discloses the claimed "guiding cover." Appx226-232. The Commission determined that the guiding cover structure of Vector Compact is precisely what the claimed "guiding cover" requires under Dometic's own construction. Appx228. Dometic does not dispute that Vector Compact has all required features of the "guiding cover" because "those features [are] found in different parts of the [Vector Compact] device." Br. at 28. Nor can it, given the substantial evidence supporting the Commission's finding.

Instead, Dometic argues, for the first time on appeal, that the Commission erred in construing “guiding cover,” and now advocates for a narrower construction that requires the “main body” to be separate from “assembly” and “guiding cover.” Br. at 32-36. According to Dometic, the “flat section” structure that the Commission identified in Vector Compact cannot be the guiding cover simply because it is “the shroud of the main body.” Br. at 31-32, 42-46. However, nothing in the claim language or the specification requires the main body to be separate from the assembly and the guiding cover. In fact, the specification expressly rebuts any possible presumption by disclosing “a main body ***including*** an assembly,” and the guiding cover. Appx296 (Abstract).

Therefore, the ’351 patent does not require that the main body must be separate from the assembly and the guiding cover as Dometic argues. The structure identified by the Commission in Vector Compact is precisely what the claimed guiding cover requires under Dometic’s own construction, and the mere labeling of that structure as a shroud does not contradict the Commission’s finding. The Commission’s summary determination of anticipation should be affirmed.

### A. The Commission Determined that Claims 1-2, 4-5, and 7 Are Anticipated Under Dometic's Own Construction of "Guiding Cover"

#### 1. The ALJ Correctly Applied Dometic's Own Construction of "Guiding Cover"

In its petition for review, Dometic acknowledged to the Commission that the ALJ applied Dometic's own exact construction. *See* Appx13858-13860. Dometic specifically acknowledged that "[a]ddressing Dometic's argument," "the ALJ found . . . that the Vector Compact had 'the cover-like element that includes a flat section with a circular opening for directing [air] to the adjacent blower and has a cylindrical section extending from the opening.'" Appx13858-13859.

Dometic now argues that the ALJ erred by construing the term "guiding cover" as "a combination of a flat section, circular opening, and cylindrical protrusion." *Compare* Br. at 32 *with* Appx228, Appx13858-13860. Dometic forfeited this argument by failing to raise it before the Commission in its petition for review. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1362-63 (Fed. Cir. 1999); *see also* 19 C.F.R. § 210.43 (b)(2) (any issue or argument not relied on in a petition for review is deemed to have been abandoned). Dometic cannot now argue, for the first time on appeal, that its proposed construction was not adopted by the ALJ. Br. at 32-33.

In any event, the ALJ correctly applied Dometic's own construction of "guiding cover" and not the alleged "combination" construction. Appx228.

Dometic misquotes the ALJ's analysis which paraphrased Dometic's construction in concluding that there is "no claim construction dispute that presently requires resolution" because Vector Compact discloses the guiding cover under either construction proposed by Dometic and Respondents.[11] Appx230. The ALJ's shorthand description of Dometic's construction is not the construction adopted and applied by the ALJ. Appx228-230. Indeed, this shorthand description establishes that the ALJ considered and applied Dometic's own construction. Appx228-230. The Commission, by affirming the ALJ's findings, adopted Dometic's own construction exactly as proposed, and did not err in construing "guiding cover." Appx203. Contrary to Dometic's argument, there is no claim construction issue on appeal as to the term "guiding cover."

*Even if* the ALJ applied the alleged "combination" construction as Dometic argues (which is incorrect), Dometic fails to show how the alleged construction is legally different from its own construction. *Compare* Br. at 32-33 *with* Br. at 43-46. Dometic argues that the two constructions are different because its own construction defines the guiding cover as "a component of the assembly" based on claim 1's language requiring "an assembly including a guiding cover." Br. at 32-

[11] The Commission did not determine whether Dometic's construction or Respondents' construction is correct, and affirmed the ALJ's finding that claims are anticipated under either construction. Appx203; *see* Br. at 24, 39-40.

33. But as Dometic admits, claim 1, under both constructions, requires "an assembly including a guiding cover" with the three features. Br. at 30-33, 43-46. Dometic's argument that the ALJ misapplied its construction of "guiding cover" is therefore an improper attempt to reframe the Commission's factual finding as one of claim construction for the benefit of a less deferential standard of review.

#### 2. Vector Compact's "Guiding Cover" Is Precisely What Dometic's Construction of the "Guiding Cover" Requires

The ALJ's application of Dometic's own construction led to the finding that Vector Compact discloses the "guiding cover" with clear and convincing evidence, and this finding is supported by substantial evidence. Appx212-213; Appx226-232.

As shown below in annotated photographs of Vector Compact, the ALJ identified: (1) the metal plate structure, which is a cover-like element with a flat section, (2) a circular opening for directing air to the adjacent blower, and (3) a cylindrical section extending from the opening. *See* Appx226-232.




Appx7592; Appx227 (Vector Compact photographs, annotated).

The ALJ determined that these structures in Vector Compact are precisely what the claimed guiding cover requires under Dometic's own construction. Appx228-231. The ALJ determined that the guiding cover structure of Vector Compact and the guiding cover of the '351 patent perform the same claimed requirement of "maintaining the main body and the blower in air communication with one another" and are in the same location of the air conditioner as "a cover-like element that is placed on the top of the evaporator 20" and "above a drain pan 100." Appx226-232; Appx331-332 (9:66-10:2, 11:25-26).

Indeed, Dometic does not dispute that all required features of the "guiding cover" under its own construction are present in Vector Compact, and implies that "those features [are] found in different parts of the [Vector Compact] device." Br. at 28, 30-48.

Instead, Dometic cites the ALJ's description of the flat section in Vector Compact as "part of a larger housing (or shroud)" as the reason why Vector Compact does not disclose the claimed guiding cover. Br. at 31-32, 45. In Dometic's view, any structure labeled as a "shroud" cannot be the claimed guiding cover because Dometic's own construction "defines the 'guiding cover' as a component of the assembly having certain features." Br. at 31-33. Dometic's argument is an attempt to improperly narrow the scope of "guiding cover" to avoid an invalidity determination. It is premised on the false assertion that "the assembly and its components [including the guiding cover] must be separate from the main body," so any structure labeled as part of the main body (*e.g.*, shroud) is categorically excluded as the assembly and its component (*e.g.*, guiding cover) regardless of the nature of the structure. *See* Br. at 33-39.

Dometic's argument fails because nothing in the claim language or the specification requires the main body and the assembly to be mutually exclusive. In fact, the specification supports the opposite by disclosing "a main body including an assembly" and a "guiding cover." Appx296 (Abstract). Contrary to Dometic's argument, the Commission applied Dometic's own construction and properly determined that Vector Compact discloses the guiding cover structure as a component of the assembly. Appx203; Appx226-232.

### 3. The ’351 Patent Does Not Require that the “Main Body” Must Be Separate From the “Assembly” and the “Guiding Cover”

The ’351 patent does not require the “main body” to be separate from the “assembly” and “guiding cover.” Dometic’s argument to the contrary is contradicted by express teachings in the specification. Br. at 33-36. Here, the specification clearly rebuts any possible presumption that the “main body” and the “assembly” must have separate structures. *Compare* Br. at 34 *with* Appx296 (Abstract).

Specifically, the specification discloses “***a main body including an assembly*** . . . The assembly includes a guiding cover . . . .” Appx296 (Abstract); *Hill-Rom Co., Inc. v. Kinetic Concepts*, 209 F.3d 1337, 1341 n.* (Fed. Cir. 2000) (referencing the patent abstract to interpret the claims). Indeed, the specification states that “the air conditioner 1 can largely be ***divided*** into a main body 4 and the blower 2. The main body 4 comprises the drain pan 100 and ***what is mounted above it***,” which includes any shroud structure and the guiding cover. Appx296 (Abstract); Appx332 (11:24-26). Figure 1, shown below, illustrates the main body comprising the drain pan 100 and the guiding cover 170 as part of the shroud structure (*e.g.*, as cover of the main body):




FIG. 1

Appx297 (annotated).

The specification also defines the shroud as the exterior cover of the main body that "houses the compressor, the evaporator and the condenser," and the guiding cover as "a cover-like element that is placed on the top of the evaporator." Appx328-329 (4:43-51, 6:17-22), Appx331 (9:66-10:2); *see also* Br. at 35.

Therefore, the specification not only rebuts Dometic's construction that "the assembly and its components must be separate from the main body," it expressly supports the opposite by disclosing that ***the main body includes the assembly and its components including the guiding cover***. Appx228-232; Appx296 (Abstract); Appx297 (Fig. 1, shown above); Appx332 (11:24-26). Dometic fails to even address the specification's express disclosures. *See* Br. at 30-48.

The specification's disclosures cited by Dometic also support that the main body includes the assembly and the guiding cover. *See* Br. at 34. The specification's disclosure that "the air conditioner 1 can largely be ***divided*** into a main body 4, and the blower 2" shows that the patent categorizes the air conditioner into ***two*** parts: (1) a main body including the assembly and the guiding cover; and (2) a blower. Appx296 (Abstract); Appx297; Appx332 (11:24-26). The patent's broad categorization of the main body as comprising the structure mounted above the drain pan is in direct conflict with Dometic's construction.

Dometic also quotes the specification's disclosures that the guiding cover is "a cover-like element that is placed on the top of the evaporator 20," Br. at 35 (citing Appx331 (10-66-11:6)), and "the optional 'shroud" as a housing on the 'main body'" that "'houses the compressor, the evaporator and the condenser'" and is "optionally formed of one or more parts," Br. at 35-36 (citing Appx328-330 (4:43-4:63, 6:20-24, 6:35-7:19)). Dometic argues that because these disclosures separately define the shroud and the guiding cover, they must be separate structures. *Id.* However, these disclosures indicate that the shroud structure and the guiding cover can have overlapping or same structure because both are in the same location in the air conditioner to house the evaporator. Therefore, the shroud and the guiding cover need not be entirely separate components as Dometic argues.

Appx296 (Abstract); Appx297; Appx328-329 (4:43-63, 6:17-24); Appx331-332 (9:66-10:2, 11:24-26).

As the ALJ found, "there is nothing inconsistent about identifying most of the shroud as part of the main body and simultaneously identifying the flat section/circular opening/cylindrical protrusion part of the shroud as the guiding cover," and "nothing in the claim language requires that they be entirely separate structures." Appx231. Therefore, the shroud structure in Vector Compact that the ALJ identified (and affirmed by the Commission) discloses the claimed guiding cover. The Court should affirm the Commission's finding that claim 1-2, 4-5, and 7 of the '351 patent are anticipated.

### B. There Is No Genuine Issue of Material Fact on the Features of Vector Compact

The Commission granted summary determination that Vector Compact anticipates claims 1-2, 4-5, and 7 of the '351 patent because there is no genuine issue of material fact as to the disclosure of Vector Compact. Appx203; Appx219-239; Appx7590-7601; Appx7603-7634; Appx7668-7671 (66:11-71:3, 76:12-77:13); Appx7683-7684 (127:20-131:18); Appx7697-7698 (182:20-186:2); Appx8138 (available at https://www.youtube.com/watch?v=BcqBvxVCN7I). Indeed, Dometic does not dispute or challenge the relevant features and structure of Vector Compact. *See* Br. at 30-48.

Instead, Dometic argues that the summary determination was improper because the Commission, at the summary determination stage, failed to consider certain testimony in the light most favorable to Dometic. Br. at 46-47.
To the contrary, the ALJ considered the testimony in the light most favorable to Dometic and determined that there is no genuine issue of material fact. *Compare* Br. at 46-47 *with* Appx230-232, Appx235.

Dometic incorrectly argues that the ALJ ignored the testimony from the inventor (Mr. Pabisz) and Dometic's expert (Dr. Paulus) regarding the "configuration of the guiding cover." Br. at 46-47. This testimony focused on the smoothness of the rotation based on the nature of materials (plastic vs metal), manufacturing method (stamped metal vs sheet metal), and how the guiding cover is fastened to the air conditioner (with screws). Br. at 47 (citing Appx232; Appx7697 (182:20-184:4); Appx9682-9686).

However, these "configurations" (*i.e.*, materials, manufacturing, and fastening method) are not claim elements. *See* Appx332-333 (cl. 1). As the ALJ found, claim 1 does not require any particular "construction material," "any particular performance metric for rotatability," or "any particular method of attaching the guiding cover" to the evaporator, so the claim language is satisfied even assuming the "configuration" related testimony cited by Dometic to be true. Appx230-232; *Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or

unnecessary will not be counted" and do not raise a genuine issue of material fact.); *Arthur A. Collins*, 216 F.3d at 1046.

The ALJ also properly considered Mr. Pabisz's testimony cited by Dometic to argue that Vector Compact does not disclose "a duct element being rotatably adjustable around the guiding cover" in claim 1. Br. at 47 (citing Appx201); Appx235. The ALJ considered Mr. Pabisz's testimony that Vector Compact had "the left-hand and right-hand version," and its blower could not rotate fully to the opposite directions. Appx7670 (76:12-17); Appx201; Appx235; *see also* Br. at 18-19. Contrary to Dometic's argument that the Commission ignored this testimony, the ALJ considered and determined that this testimony fails to raise a genuine issue of material fact because the cited evidence "at most shows that the range of rotation [in Vector Compact] was restricted." Appx235.

Claim 1 only requires that the duct element be "rotatably adjustable" and does not require any particular range of rotation, so the evidence on whether the range of rotation in Vector Compact was restricted is immaterial. Appx201; Appx235; *Anderson*, 477 U.S. at 248; *Arthur A. Collins*, 216 F.3d at 1046. The Commission determined that there is no genuine issue of material fact as to the rotatability of the structure in Vector Compact that corresponds to the duct element. Appx201; Appx235. Therefore, the Commission properly granted summary determination of anticipation.

### C. The Prosecution History Establishes that the Claims Were Amended to Overcome Dodge, Not Vector Compact

Dometic argues that claim 1 was amended during prosecution to overcome Dodge. Br. at 14-15, 39. Although Vector Compact was not cited or considered during prosecution, Dometic appears to argue that claim 1 cannot be anticipated by Vector Compact based on the prosecution history concerning Dodge. Br. at 18-19, 39. Unlike Dodge, Vector Compact discloses all limitations of claims 1-2, 4-5, and 7 including "the assembly including a guiding cover and a cylindrical duct element." Appx203-207.

During prosecution of the '351 patent, the Examiner rejected then-pending claim 54 (now issued-claim 1) as anticipated by Dodge. Appx35178. Dodge discloses changing the blower's orientation by "rotating ***the square mounting plate*** 34 supporting the blower housing 17 ninety degrees about an axis" and "reconnecting ***the square plate*** to the condenser/evaporator shroud 35." Appx41672 (Dodge at 5:15-20). To overcome Dodge, Dometic amended claim 54 by adding the assembly limitation now recited in claim 1. *See* Br. at 15.

Dometic has not established, either before the Commission or on appeal, that Dodge and Vector Compact cover the same disclosure. Br. at 18-19, 39; Appx203-207. Instead, Dometic relies on attorney argument to assert that Dodge covers Vector Compact. Br. at 18-19, 39. A comparison of Dodge and Vector Compact establishes that they have different designs for connecting the blower and the main

body. Appx203-207. Specifically, Dodge discloses a "***square*** mounting plate" for connecting the blower to the main body. Appx41672 (5:15-20). This is different from the guiding cover in Vector Compact, which has a "***circular*** opening for directing air to the adjacent blower and has a ***cylindrical*** section extending from the opening." Appx203-207; Appx228. Vector Compact also discloses a duct element, which is not present in Dodge. *See* Appx206-207; Appx224 ("Dometic does not expressly dispute the presence of the duct element [in Vector Compact].").

Indeed, according to Dometic's corporate representative and named inventor of the '351 patent, Mr. Pabisz, Dodge's figures "represent[] the CoolMate unit," and the "connection between the blower and the main body" of "[t]he CoolMate and Vector Compacts were ***totally different designs*** in that sense." Appx36142-36143 (113:4-114:10); Appx36194 (165:5-21).

For the forgoing reasons, the prosecution history relating to Dodge does not negate the Commission's determination that Vector Compact anticipates claims 1-2, 4-5, and 7 of the '351 patent.

## III. The Commission Correctly Construed the Axis and Directional Limitations of Claims 18-22

Claim 18 recites a "first axis" rotation and a "second axis" rotation. Appx333 (cl. 18). The main dispute on appeal is whether "the blower being rotatable about [a] ***first axis*** so that the outlet can be oriented toward a first

direct[i]on and a second direction" ("axis limitation") in claim 18 requires a different rotation from "an assembly for adjusting the blower with respect to the main body about a ***second axis***" such that the claim requires two modes of rotation for the blower. Appx333 (cl. 18); Br. at 48-50.

The Commission's construction of the axis and directional limitations are supported by the claim's plain language, the intrinsic evidence, and the extrinsic evidence. The Commission construed the axis and directional limitations as:

- "The axis limitation is construed to require a different type of rotation separate from the assembly's adjustment/rotation, and involving a structural component that may be a part of, but is identifiably distinct from, the claimed portion of the 'assembly.'" Appx26.

- "The directional limitation . . . is construed as 'said first and second directions resulting from rotation about said first axis point to substantially opposing sides of the main body with respect to a vertical plane.'" Appx26; *see supra* n.1.

The Commission correctly construed claim 18 to require two modes of rotation where the blower being rotatable about the first axis and the assembly for adjusting the blower about the second axis are two different rotations. Appx24-59. In contrast, Dometic argues that claim 18 does not require two modes of rotation, and the axis limitation "need not be satisfied by, (1) a structure identifiably distinct from the claimed assembly; or (2) a different type of rotation separate from the assembly's adjustment/rotation." Br. at 50, 68. Dometic's arguments are not

supported by the claim's plain language, intrinsic evidence, and the testimony of its own corporate representative and a named inventor of the patent.

### A. The Claim Language Requiring Two Different Rotations by Two Different Structures in Two Different Axes Supports the Commission's Construction

Claim 18 recites two separate axes about which the blower and the duct element rotate. Appx333 (cl. 18). Relevant portions of claim 18 recite, *inter alia*:

| "First Axis" in Claim 18 | "Second Axis" in Claim 18 |
|---|---|
| "***the blower being rotatable about [a] first axis*** so that the outlet can be oriented toward a first direct[i]on and a second direction, and the first and second directions point to substantially different lateral sides of the main body" | "***an assembly for adjusting the blower*** with respect to the main body ***about a second axis so as to alter*** an orientation of the outlet,<br>. . .<br>***the duct element being rotat[a]bly adjustable*** around the guiding cover ***about the second axis*** at the first base ***so as to alter*** the orientation of the outlet." |

Appx333 (cl. 18); *see also* Appx29-30.

The "blower ***being rotatable***" limitation is a first type of rotation where the blower itself is capable of rotation about a "first axis." Appx333 (cl. 18). The "assembly" limitation provides the function of "***adjusting*** the blower" "about a second axis so as ***to alter*** an orientation of the outlet," which is accomplished by "the duct element being rotat[a]bly adjustable around the guiding cover about the

second axis at the first base so as ***to alter*** the orientation of the outlet." Appx333 (cl. 18). The plain language "***adjusting*** . . . so as ***to alter***" about the "second axis" indicates that the blower's outlet has an initial orientation, which is oriented by "the blower being rotatable about [a] first axis," and this initial orientation is ***altered*** about the second axis by the duct element. Appx333 (cl. 18).

Therefore, the Commission's construction requiring two modes of rotation is supported by the claim's plain language describing two different rotations by two different structures around two different axes:

(1) "***blower*** being rotatable about a ***first axis***," and

(2) "***duct element*** being rotat[a]bly adjustable . . . about the ***second axis*** . . . ***so as to alter*** the orientation of the outlet." Appx333 (cl. 18).

### B. The Specification Supports Two Modes of Rotation for the "Blower"

Dometic reads the specification as describing only one mode of rotation for the blower, and ignores the disclosures regarding the second mode of rotation in an attempt to salvage its construction that only one mode of rotation is required. Br. at 26-27, 62. Dometic's reading of the specification is plainly incorrect and fails to consider the specification as a whole.

### 1. The Specification Discloses Two Modes of Rotation to Solve the Problem of Installing an Air Conditioner in Limited Space

The ’351 patent specification discloses two modes of rotation for the blower: (1) the blower’s rotation via the assembly, which is based on the duct element’s rotation around the guiding cover; and (2) the blower’s rotation around the duct element. Appx332 (11:64-67, 12:6-24). The specification explains that the two modes of rotation for the blower allow for easy installation of the air conditioner in limited space because the blower’s outlet can point to different directions and the air conditioner’s overall height can be changed or restricted. Appx327 (1:19-28); Appx332 (11:64-67, 12:6-24). These disclosures support the Commission’s construction requiring two modes of rotation. *Renishaw PLC v. Marposs Societa’ Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) (“The construction that stays true to the claim language and most naturally aligns with the patent’s description of the invention will be, in the end, the correct construction.”); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005).

As shown in Figure 22, below, one mode of rotation is the duct element’s rotation around the guiding cover, which adjusts the blower attached to the duct element about the second axis in claim 18. Appx332 (11:64-67). Another mode of rotation is the blower’s rotation around the duct element about the first axis in claim 18. Appx332 (12:6-24).




FIG. 22

Appx317 (annotated). The two modes of rotation for the blower are illustrated in Figure 30B-2, shown below. The original Figure 30B-2 (left) shows a duct element's side view, and the modified Figure 30B-2 (right) has been adapted to add a guiding cover and a blower according to Figure 22.




FIG. 30B-2 (Original) FIG. 30B-2 (Modified)

Appx325 (annotated and modified).

The yellow circle illustrates the blower's rotation via the assembly corresponding to the "second axis" rotation in claim 18: "the duct element being rotat[a]bly adjustable around the guiding cover about the second axis" to alter the orientation of the blower. Appx333 (cl. 18). The specification describes this "second axis" rotation as "[t]he orientation of the outlet 218 of the blower can be altered simply by . . . rotating the duct element 184 to the desired orientation." Appx332 (11:64-67). Dometic argues that the Commission's construction "excludes" from claims 18-22 this embodiment in which the assembly adjusts the blower's orientation. Br. at 28-29, 50, 56-60. To the contrary, the Commission's construction includes this embodiment as one of the two modes of rotation required by the claims. Appx47-49.

The green circle illustrates another type of rotation for the blower corresponding to the "first axis" rotation in claim 18: "the blower being rotatable about [a] first axis." Appx333 (cl. 18). The specification describes this first axis rotation as "***adjusting [or rotating]***[12] ***the orientation in which the blower 2 is fastened to the duct element 184***" to change or restrict the air conditioner's overall height. Appx332 (12:21-24).

---

[12] *Supra n.3.*

Dometic argues that this second type of rotation (illustrated above as the green circle) is "not rotation" but "a way to **install** (*i.e.*, couple) the blower to the duct element." Br. at 26-27, 59-62 (emphasis in original). While Dometic cites unrelated claim 17 as its support, claim 17 fails to show that adjusting/rotating the blower with respect to the duct element is "not rotation" contemplated by claims 18-22 and the specification. Br. at 26, 62. Dometic's attorney argument[13] must fail because it does not explain why "a way to install" the blower is necessarily different from adjusting/rotating the blower around the duct element when the main purpose of the invention is to adjust/rotate the blower as "a way to install" an air conditioner in limited space. *Compare* Br. at 26, 62 *with* Appx327 (1:19-28), Appx332 (12:21-24).

Dometic's argument is contradicted by its admission that "the intrinsic evidence uses ***rotation and adjustment synonymously***," so the specification clearly discloses "adjusting [that is, ***rotating***] the orientation in which the blower 2 is fastened to the duct element 184" under Dometic's own understanding of the intrinsic evidence. Br. at 68; Appx332 (12:21-24). Importantly, the patent discloses rotating the blower around the duct element as "a way to install" the air conditioner in limited space by changing its height. Appx327 (1:19-28); Appx332

[13] Dometic also forfeited this argument by failing to raise it before the Commission. *Finnigan*, 180 F.3d 1354, 1362-63.

(12:21-24); Appx36110-36111 (81:17-82:15); Appx36213-36214 (184:9-185:14). Nothing supports Dometic's argument that rotating the blower around the duct element is "not [a] rotation" contemplated by the claims and the specification. Br. at 26, 62.

Dometic relies only on the specification's disclosure about the blower's rotation via the assembly, where the duct element's rotation alters the orientation of the blower (*i.e.*, about the second axis), to argue that its construction requiring only one mode of rotation is supported. Br. at 59 (citing Appx332 (11:40-62, 11:64-12:3)); Appx49. Yet, as discussed above, the specification also discloses another type of rotation for the blower (*i.e.*, about the first axis) "by adjusting [or rotating] the orientation in which the blower 2 is fastened to the duct element 184." Appx332 (12:21-24). Dometic simply fails to acknowledge that the specification discloses this second type of rotation, which is critical in achieving the patent's goal of installing an air conditioner in limited space by restricting/changing its height. *Compare* Br. at 26, 62 *with* Appx327 (1:19-28), Appx332 (12:6-24).

When the specification is considered as a whole, including the disclosure that the blower is rotatable "by adjusting [or rotating] the orientation in which the blower 2 is fastened to the duct element 184" (*i.e.*, about the first axis), the Commission's construction is fully supported. *In re Katz Interactive Call Proc. Patent*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("[T]here is a strong presumption

against a claim construction that excludes a disclosed embodiment."); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1373 (Fed. Cir. 2005) ("[I]t is necessary to consider the specification as a whole, and to read all portions of the written description, if possible, in a manner that renders the patent internally consistent."); *Renishaw*, 158 F.3d at 1250.

#### 2. The Specification Discloses Two Distinct Axes with Two Distinct Modes of Rotation Even When the Two Axes Are Colinear

Dometic argues that the specification does not support the Commission's construction because the two axes can be colinear.[14] Br. at 48-50, 53-54. In Dometic's view, if the two axes are colinear, two modes of rotation are not required. Br. at 48-50, 53-54, 68. This argument again ignores the plain language of the claims and the specification's explicit disclosures describing two modes of rotation and fails for that reason. Appx332 (11:64-67, 12:6-24); *supra* §§ III.A, III.B.1. Indeed, even the portions of the specification cited by Dometic describe having two distinct rotations regardless of whether the two axes are colinear or spaced apart. *See* Br. at 13, 48-50, 53-54.

[14] The two axes can be colinear when they overlap with each other.

Dometic refers to the specification's description of "axis A" and "axis B" to argue that the two claimed axes can be colinear or spaced apart.[15] *Id.*; *see also* Appx2317. The specification discloses that "[a]s shown in FIGS. 30A-1 through 30B-2, the blades 214 of the blower 2 rotate about a first axis B ***while*** the blower 2 itself can be rotated about a second axis A with respect to the main body 4." Appx332 (11:30-37). That is, the two axes A and B have their distinct rotations ***regardless of whether the two axes are colinear*** (shown in Figure 30A-2) or spaced apart (shown in Figure 30B-2). Appx332 (11:30-37). Figures 30A-1 through 30B-2, shown below, illustrate this point:

[15] The ALJ adopted Dometic's position and construed that the terms "first axis" and "second axis" "need not be different" based on the specification's description of "axis A" and "axis B." Appx3781. The Commission affirmed this construction. Appx24-25.




FIG. 30A-1 FIG. 30A-2

FIG. 30B-1 FIG. 30B-2

Appx325 (annotated). The blades 214 rotate within the blower as illustrated in Figure 28. Appx323. The specification, therefore, supports the Commission's construction requiring two modes of rotation, regardless of whether the two axes are colinear or spaced apart. Appx323; Appx325; Appx332 (11:30-37, 11:64-67, 12:6-24).

In contrast, Dometic argues that the two colinear axes can be satisfied by only one mode of rotation for the blower via the assembly, because the two claimed axes simply "refer to [the] same manner of rotation when viewed from two

different perspectives."[16] Br. at 13-14, 25, 48-49, 53-54. Dometic's argument is contradicted by the specification's clear disclosure that the two axes A and B have two distinct modes of rotation even when the two axes are colinear as shown in Figures 30A-1 and 30A-2. Appx325 (Figs. 30A-1, 30A-2); Appx332 (11:30-37).

Dometic continues to ignore the clear disclosures in the specification. Nothing in the patent indicates, let alone suggests, that the blower's rotation via the assembly around a single axis can satisfy both the "first axis" rotation and "second axis" rotation limitations simply by looking at the rotation from two different vantage points. The specification supports the Commission's construction that requires two modes of rotation for the blower, regardless of whether the claimed axes are colinear or spaced apart.

#### 3. The Specification Supports the Presumption that the "First Axis" Rotation and "Second Axis" Rotation Require Two Modes of Rotation

The plain language of claim 18 creates a presumption that the separately recited limitations for the "first axis" rotation (about which the blower rotates) and the "second axis" rotation (about which the duct element rotates) require two

---

[16] Dometic forfeited this argument by failing to raise it before the Commission. *Finnigan*, 180 F.3d 1354, 1362-63. Before the Commission, Dometic considered the "first axis" and the "second axis" as the "same rotational axis," and did not distinguish between the two based on different vantage points. *See* Appx27725-27726.

separate modes of rotation. Appx46-47; *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024) ("[T]here is a 'presumption' that separately listed claim limitations may indicate separate and distinct physical structure, but that presumption may always be rebutted in the context of a particular patent."); *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010). Unlike with the terms "main body" and "assembly" discussed above, *supra* § II.A.3, nothing in the specification rebuts this presumption as applied to "first axis" and "second axis."

As explained above, the specification expressly discloses two modes of rotation for the blower that correspond to the claimed "first axis" and "second axis" limitations to solve the problem of installing an air conditioner in limited space. Appx327 (1:19-28), Appx332 (11:64-67, 12:6-24); *supra* § III.B.1. The specification also discloses that the two axes ("axis A" and "axis B") represent two distinct rotations regardless of whether the two axes are colinear or spaced apart. Appx332 (11:30-37) ("the blades 214 of the blower 2 rotate about a first axis B ***while*** the blower 2 itself can be rotated about a second axis A"); Appx325; *supra* § III.B.2. These disclosures fully support the Commission's construction.

Dometic incorrectly relies on limited portions of the specification describing only one of the two modes of rotation for the blower and the two axes "A" and "B," as evidence that the presumption is rebutted. Br. at 53. This is improper,

because Dometic failed to properly consider the specification's disclosure about the second mode of rotation, which is critical in achieving the patent's goal of installing an air conditioner in limited space by restricting its overall height. *Compare* Br. at 26, 62 *with* Appx327 (1:19-28), Appx332 (12:6-24). Dometic also failed to consider the disclosure that the two axes represent two distinct modes of rotation—even when the two axes are colinear. *Compare* Br. at 13, 53-54 *with* Appx332 (11:30-37). The specification, when considered as a whole, does not rebut the presumption requiring two modes of rotation for the "first axis" and "second axis."

### C. The Prosecution History Supports Two Modes of Rotation of the "Blower"

#### 1. The Examiner's Amendment of "An Axis" to "A First Axis" and "A Second Axis" Overcame the Prior Art

During prosecution of the '351 patent, claim 18 (then-claim 72), was allowed over the prior art only after Dometic authorized the Examiner's amendment amending "the blower being rotatable about ***an axis***" to a "***first axis***," and adding the assembly limitation for adjusting the blower about a "***second axis***." Appx35228. This amendment is shown below:

> Authorization for this examiner's amendment was given in a telephone interview with Bryan Gallo, Esq., Attorney of Record (Reg. No. 59,814) on 08/08/2011.

- Claim 72 has been amended and replaced by the following:

--72. (Previously presented) An air conditioning device for a nautical vehicle including: a main body; and a blower including an inlet and an outlet, the inlet being in air communication with the main body, the blower being rotatable about ~~an~~ first axis so that the outlet can be oriented toward a first direction and a second direction, and the first and second directions point to substantially different lateral sides of the main body, and an assembly for adjusting the blower with respect to the main body about a second axis so as to alter an orientation of the outlet, the assembly including a guiding cover and a cylindrical duct element for maintaining the main body and the blower in air communication with one another, the duct element having a first base and a second base, and coupled to the blower at the second base, the first base of the duct element dimensioned to correspondingly fit the guiding cover, and the duct element being rotatably adjustable around the guiding cover about the second axis at the first base so as to alter the orientation of the outlet.--

Appx35228. The Examiner allowed the claim, stating that this amendment overcame the prior art of record, including Robinson that discloses the limitation "the blower being rotatable about ***an axis***." Appx35179; Appx35229-35232.

Therefore, amending "an axis" to a "first axis" and adding the assembly limitation with a "second axis" during prosecution is further support that the blower's rotation about the first axis must occur over a different axis than the assembly's rotation about the second axis. Appx37; *Univ. of Mass. v. L'Oréal S.A.*, 36 F.4th 1374, 1379 (Fed. Cir. 2022) ("The prosecution history, in particular, may be critical in interpreting disputed claim terms.") (quotation omitted).

### 2. Dometic's Proposed Construction Reverts Claim 18's First Axis and Second Axis Terms Back to a Pre-Examiner Amendment Version of the Term "An Axis"

Dometic's proposed construction is not only improper, but also reverts claim 18's "first axis" and "second axis" terms back to the pre-Examiner amendment version of the term—"an axis." *Compare* Appx27725 *with* Appx35228. Before the Commission, Dometic argued that the "first axis" and "second axis" in claim 18 can be satisfied by only one mode of rotation, and stated that "[c]laim 18 can be rewritten in relevant part as" shown below:

> [T]he blower being rotatable **about [an] axis** so that the outlet can be oriented toward a first directon [*sic*] and a second direction…the duct element being rotatbly [*sic*] adjustable around the guiding cover **about the [] axis** at the first base so as to alter the orientation of the outlet.

Appx27725 (emphasis in original); Appx45.[17] Such a rewriting of the claim is not proper and is not supported by the prosecution history.

Contrary to Dometic's argument, the Commission did not analyze the prosecution history for a disclaimer. Br. at 55-56; Appx45-46; Appx126. Instead,

[17] Dometic appears to cite its rewritten version of claim 18, quoted in the Commission opinion, to argue that the Commission misunderstood Dometic's position as "the first axis and second axis **must** be a single axis." Br. at 51-52 (citing Appx45) (emphasis in original). There was no misunderstanding. The Commission simply quoted Dometic's own rewritten version of claim 18 as Dometic stated in its petition for review of the ALJ's initial determination. *See* Appx45 (citing Appx27725).

the Commission properly considered and analyzed the prosecution history to inform the meaning of the disputed terms and determined that the "first axis" and "second axis" limitations require two modes of rotation for the blower. *See L'Oréal*, 36 F.4th at 1379 (holding that "even where 'prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction'").

### D. Dometic's Proposed Construction Reads the Axis Limitation Out of the Claim and Renders it Void, Meaningless, or Superfluous

Dometic's proposed construction of claim 18 requires only one mode of rotation such that the axis limitation for the "first axis" is subsumed into the assembly for adjusting the blower about the "second axis." Br. at 50, 59, 68. The Commission determined that under Dometic's proposed construction, claim 18 would effectively read:

> An air conditioning device for a nautical vehicle including:
>
> a main body; and
>
> a blower including an inlet and an outlet, the inlet being in air communication with the main body~~, the blower being rotatable about first axis so that the outlet can be oriented toward a first directon and a second direction, and the first and second directions point to substantially different lateral sides of the main body~~, and
>
> an assembly for adjusting the blower with respect to the main body about an ~~second~~ axis so as to alter an orientation of the outlet so that the outlet can be oriented toward a first direction and a second direction, and the first and second directions point to substantially different lateral sides of the main body, the assembly including
>
> a guiding cover and a [cylindrical] duct element for maintaining the main body and the blower in air communication with one another,
>
> the duct element having a first base and a second base, and coupled to the blower at the second base, the first base of the duct element dimensioned to correspondingly fit the guiding cover, and
>
> the duct element being [rotatably] adjustable around the guiding cover about the ~~second~~ axis at the first base so as to alter the orientation of the outlet.

Appx35-36.

Dometic's broad construction would read the axis limitation entirely out of the claim because it would only require the blower's orientation to change as a result of adjusting the assembly. Br. at 50, 68; Appx35-36; Appx128-29. Such a reading is improper. *Tex. Instruments v. ITC*, 988 F.2d 1165, 1171 (Fed. Cir. 1993); Appx35-36. Likewise, Dometic's proposed construction would render the axis limitation void, meaningless, or superfluous for the same reason. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021); Appx48. In contrast, the

Commission's construction properly avoids reading out the axis limitation, and does not render it void, meaningless, or superfluous.

### E. The Extrinsic Evidence Supports Two Modes of Rotation for the "Blower"

#### 1. Dometic's Corporate Representative and a Named Inventor Testified that the "Crux" of the Patent Is the "Two Rotations of Axes"

The Commission determined that the testimony of Mr. Pabisz, a named inventor of the '351 patent and Dometic's corporate representative, is consistent with the intrinsic evidence and the plain language of claim 18 requiring two modes of rotation. Appx55-59. Without any proper basis, Dometic tries to discount Mr. Pabisz's testimony, which directly contradicts Dometic's claim construction arguments. Br. at 71-72.

Mr. Pabisz testified that the '351 patent solved a problem of "***keep[ing] the height***" of the air conditioner as "you try to ***turn the blower from one direction to the other***." Appx36110-36111 (81:17-82:15). As a solution, Mr. Pabisz referenced Figure 24 and explained:

> [T]he ***crux*** of the patent here in having a ring [shown in Figure 24] that allowed you to have ***two axes*** within the same ring; ***an axis for the blow[er] rotation*** *and* ***an axis for the rotation relative to the shroud*** . . . It's the ***ability for it to have <u>two rotations of axes</u> that's novel***.

Appx36213-36214 (184:9-185:14). Mr. Pabisz also identified the two axes at his corporate deposition by marking an axis for "Blower" and another axis for "Shroud," as shown below:




Appx37963 (Fig. 24B annotated by Mr. Pabisz); Appx36213-36214 (184:5-185:14). Mr. Pabisz's identification of the two distinct axes for the "two rotations" as the "crux" of the patent further supports the Commission's construction.

### 2. Dometic's Reading of Intrinsic Evidence Is Contradicted by the Testimony of Dometic's Own Corporate Representative and a Named Inventor

Based on Mr. Pabisz's testimony, the Commission determined that the extrinsic evidence supports the Commission construction. *Sandoz*, 574 U.S. at 332

(holding that subsidiary factual findings in connection with the claim construction is reviewed for substantial evidence). The Commission determined that Mr. Pabisz's testimony refers to the duct element in Figure 24 as a "ring" allowing two modes of rotation: (1) a rotation of the "Blower" relative to the duct element about a first axis, and (2) another rotation of the duct element itself relative to the "Shroud" (which is a cover of main body) about a second axis. Appx56. Dometic argues that "the Commission distorts and takes out of context testimony." Br. at 71. To the contrary, the Commission properly considered Mr. Pabisz's testimony as relevant in understanding the specification, and did not distort or take Mr. Pabisz's testimony out of context. Appx57-58.

The Commission determined that Mr. Pabisz qualifies as a person of ordinary skill in the art ("POSITA"), and his testimony is highly relevant to the skilled artisan's understanding of the patent. Appx59. In particular, the Commission credited Mr. Pabisz's testimony regarding the height problem that he solved by inventing the subject matter of the '351 patent and "the ability for it to have two rotations of axes that's novel" at the time of his invention. Appx36110-36111 (81:17-82:15); Appx36213-36214 (184:9-185:14); *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999) (for claim construction purposes, "[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims" and

"the problems that existed at the time the invention was made and the inventor's solution to these problems"); *see also AbbVie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, 764 F.3d 1366, 1377 (Fed. Cir. 2014). While Mr. Pabisz was not testifying directly about claim scope or the exact means on how the blower can rotate, his testimony is relevant in understanding "the invention and what was intended to be conveyed by the specification and covered by the claims" and "the problems that existed at the time the invention was made and the inventor's solution to these problems." *Voice Techs.*, 164 F.3d at 615; Appx55-59; Br. at 71-72.

Dometic's reading of the specification is contradicted by Mr. Pabisz's testimony. Appx58. Dometic reads the specification as disclosing only one mode of rotation for the blower, yet Dometic's corporate representative testified the "crux" of the patent as "the ability for it to have ***two rotations of axes that's novel***." *Compare* Br. at 26, 62 *with* Appx36110-36111 (81:17-82:15), Appx36213-36214 (184:9-185:14). While Dometic argues that Mr. Pabisz's testimony "cannot negate the intrinsic evidence," Mr. Pabisz's testimony is consistent with the intrinsic evidence disclosing two modes of rotation for the blower. Br. at 72. This supports the Commission's construction of claim 18. Appx55-59; *Voice Techs.*, 164 F.3d at 615; *Renishaw*, 158 F.3d at 1250.

### F. The Commission's Construction Does Not Require Disassembly

The Commission's construction of the axis limitation does not require the blower to be disassembled for its rotation. *Compare* Appx26 *with* Br. at 56-65. Dometic's arguments are based on the false assumption that such disassembly is required. *See* Br. at 56-65.

#### 1. The Commission Properly Analyzed the Specification and the Drawings to Find that Apertures Are Used for Coupling/De-Coupling the "Duct Element" and "Blower"

The Commission analyzed the specification in connection with the figures to properly determine that one exemplary means for rotating the blower includes using apertures to fasten the blower to the duct element in different orientations. Appx51. Dometic misunderstands the Commission's construction as requiring this exemplary means (*e.g.*, using apertures), when it does not. *Compare* Appx26 *with* Br. at 27, 59-65.

The Commission considered and analyzed Figures 22, 24, and 25, in connection with the specification's text: "***apertures 210*** for coupling the duct element 184 onto the blower 2," Appx332 (11:1-3), and "adjusting the orientation in which the blower 2 is fastened to the duct element 184," Appx332 (12:21-24). The "apertures 210" are shown in Figure 24 below:




FIG. 24A




FIG. 24B

Appx319 (annotated). The Commission determined that if apertures are used to couple the blower to the duct element, a POSITA would understand that the same apertures would allow the blower to be decoupled temporarily, rotated a discrete amount, and recoupled to the duct element as one possible means for rotating the blower with respect to the duct element. Appx34-35. Contrary to Dometic's arguments, the Commission did not improperly rely on the figures to find "precise proportions of the elements," let alone limit the claims or "consider the claimed structural features in isolation" to find that the blower can be disassembled as one exemplary means of rotation. Br. at 62-65.

Dometic argues that the Commission's findings of using apertures as one exemplary means for rotation "are speculative inferences" based on "limited portions of the specification to the exclusion of others," and "insufficient to limit

Claim 18-22 to require a second mode of rotation." Br. at 60-61. The Commission's findings are not speculative; instead, the findings are based on consideration of the teachings in the *entire* specification. Appx34-35. While Dometic alleges that the Commission ignored the specification and the ALJ's findings, it is Dometic that ignores and misreads the specification. Br. at 26, 62; *supra* § III.B.1.

Dometic also argues that the Commission's determination to use the apertures as one possible means for the blower's rotation is improper because the specification, in a ***different paragraph***, discloses adjusting the blower through "a sliding mechanism." Br. at 62; Appx332 (12:28-36). Dometic cites the specification's other disclosure about the blower's rotation via the assembly (*i.e.*, the second axis). The other disclosure cited by Dometic states that the duct element's rotation around the guiding cover may occur through "a sliding mechanism" or "may not occur through sliding," and the rotation may occur by "completely removing the duct element 184 from the guiding cover 170." Appx332 (12:28-36). This disclosure is not related to the Commission's findings that the blower can rotate with respect to the duct element (*i.e.*, the first axis) using the apertures in the preceding paragraphs, Appx332 (11:1-3, 12:6-24). The specification discloses different ways in which the blower can rotate, and it is improper for Dometic to cite one embodiment (using a sliding mechanism) to

argue that the Commission's findings about a different embodiment (using apertures) in different parts of the specification are inaccurate. If at all, the paragraph cited by Dometic shows that the patent contemplates both sliding and disassembly as methods of rotation. Appx332 (12:28-36).

In any event, the claim language, consistent with the Commission's construction of claim 18, only requires two modes of rotation for the blower, and does not require any specific method of rotation for the axis limitation. Appx26. The Commission's explanation of an exemplary way of rotating the blower (*e.g.*, using apertures) does not limit the claims in any way. Appx26; Appx34-35. Therefore, Dometic's argument lacks merit.

#### 2. The Terms "Coupled" and "Air Communication" Do Not Prevent Rotation or Adjustment of the Blower with Respect to the Duct Element

Dometic argues that the Commission's construction errs by reading out and contradicting claim 18's language requiring the blower to be "in air communication" with the main body, and be "coupled" to the duct element. Br. at 56-59. Dometic appears to misunderstand these terms as precluding the blower's rotation around the duct element about the first axis. *Id.* The plain meaning of the terms "coupled" and "air communication" belies this argument.

The term "coupled" generically indicates a connection. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999) ("[The] term

'coupled' generically describes a connection."). Claim 18 simply recites "coupled" to indicate that the duct element's "second base" is connected to the blower, and nothing in the claim language or the specification indicates that the coupled components cannot rotate.

The specification uses the term "coupled" broadly to allow for rotation: "The blower 2 is ***coupled*** to the evaporator 20 by fastening the duct element 184 onto the blower 2" and "***rotating*** the duct element 184 to obtain the desired orientation for the blower 2." Appx332 (11:10-21). Therefore, the patent contemplates the blower's rotation while "coupled" or connected to other components. Appx332 (11:10-21).

Likewise, claim 18 recites "air communication" to indicate that the duct element maintains the "air communication" between the main body and the blower, so air can flow through it. Nothing in the claim language or the specification indicates that maintaining "air communication" precludes the blower's rotation around the duct element.

Dometic implies that claim 18's "coupled" and "air communication" language is inconsistent with the Commission's finding that the blower can be

temporarily disassembled using apertures as one exemplary means of rotation.[18] This argument lacks merit because the Commission's construction does not require such disassembly.

Dometic also argues, without support, that the Commission ignored "plausible embodiments where the blower and duct element are irreversibly 'coupled,' such as via welding," thereby precluding the blower's rotation relative to the duct element about the first axis. Br. at 58. This argument is not supported by the intrinsic record. The specification discloses "***adjusting the orientation in which the blower 2 is fastened to the duct element 184***," and using "***apertures 210*** for coupling the duct element 184 onto the blower 2." Appx332 (11:1-3, 12:21-24). The disclosure of "adjusting" the orientation in which the blower is fastened to the duct element using "apertures" indicates that the blower and the duct element are not permanently/irreversibly coupled. Appx332 (11:1-3, 12:21-24). Again, it is Dometic that ignores the specification's such disclosures. Br. at 26, 62.

---

[18] Dometic's implication is contradicted by its position before the Commission that ***claim 18 allows disassembly*** of the blower from the main body. Appx41-44. Before the Commission, Dometic argued that "the duct element being rotatably adjustable" should be construed to allow "***partial disassembly***," and the Commission adopted Dometic's construction. Appx43; Appx2312-2315; Appx3772-3776. Dometic's construction of claim 18, as adopted by the Commission, allows disassembly of the duct element for rotation, which necessarily disassembles the blower from the main body. Appx43 (n.10).

### G. The Dependent Claims Support the Commission's Construction

#### 1. Dependent Claims 20-21 Support the Commission's Construction

The Commission's construction that the blower ***itself*** is "rotatable about [a] first axis" separate from the assembly is further supported by dependent claims 20-21, and the specification. Appx26; Appx122-123; Appx131. Specifically, the claims recite that "the blower ***can be*** rotated" and "the blower ***is*** rotatable" without any rotation via the assembly. Appx333 (cls. 20-21). These additional dependent limitations clearly establish that the patentee intended for the blower to be rotatable separate from the assembly. Appx333 (cls. 20-21). Nothing in the plain language of claims 18 and 20-21 indicates that the blower's rotation about the first axis is satisfied by the assembly's adjustment about the second axis as Dometic argues. Br. at 69-72.

The Commission's analysis is supported by the intrinsic evidence. The specification discloses "the rotatable blower" based on "how the blower 2 is fastened in relation to the duct element 184" and "adjusting [or rotating] the orientation in which the blower 2 is fastened to the duct element 184." Appx332 (12:19-24). The specification also discloses that "the blower can be rotated without interference from the compressor, the evaporator and the condenser" and "the blower is rotatable by more than 270 degrees," again without reference to the assembly. Appx327 (2:54-58). Therefore, the specification supports the

Commission's construction that the blower itself is rotatable separate from the assembly (claim 18), "without interference" (claim 20) and "more than 270 degrees" (claim 21). Appx327 (2:54-58); Appx332 (12:6-24).

Dometic misunderstands the specification's passage about "rotating the blower 2 and the duct element 184" to alter and vary the blower's orientation by more than 270 degrees as "the ***only description in the specification*** regarding how [a] 270 degree rotation is achieved by the claimed air conditioning unit." Br. at 69-70 (quoting Appx332 (11:40-12:3)). Dometic fails to acknowledge or address the specification's other disclosure that "the blower can be rotated without interference," and "the blower is rotatable by more than 270 degrees" without reference to the assembly. *Compare* Br. at 69-70 (citing Appx332 (11:40-12:3)) *with* Appx327 (2:57-58), Appx332 (12:6-24). When the specification is considered as a whole, including the disclosures that the blower itself is rotatable separate from the assembly, "without interference," and "more than 270 degrees," the specification confirms the Commission's construction. *In re Katz*, 639 F.3d at 1324; *Pfizer*, 429 F.3d at 1373; *Renishaw*, 158 F.3d at 1250.

#### 2. The Commission's Construction Is Supported by the Doctrine of Claim Differentiation

The Commission's construction of claim 18 does not violate the doctrine of claim differentiation as to claim 22. *See* Br. at 65-67. Relevant portions of claims 18 and 22 are shown below, with the corresponding limitations bolded:

| Claim 18 | Claim 22 |
|---|---|
| ***an assembly for adjusting <u>the blower with respect to the main body</u>*** about a second axis so as to alter an orientation of the outlet<br>. . .<br>the duct element being rotat[a]bly adjustable around the guiding cover about the second axis at the first base so as to alter the orientation of the outlet. | ***a clamp element for maintaining <u>the blower oriented with respect to the main body</u>***, and<br><br>wherein only loosening of the clamp element is necessary to change orientation of the blower. |

Appx333 (cls. 18, 22).

The Commission interprets claim 22's "clamp element" to limit how the assembly of claim 18 adjusts the blower's orientation "with respect to the main body" as is explicitly recited in the claim. Appx52-53. The clamp element maintains the blower's orientation as adjusted by the assembly, and "only loosening of the clamp element is necessary to change orientation of the blower" via the assembly about the second axis. Appx333 (cls. 18, 22).

This reading is supported by the specification. As shown in Figure 22 below, the specification discloses that the assembly's duct element is clamped around the guiding cover's cylindrical protrusion by a clamp element, which can be loosened to allow the duct element to rotate, thereby changing the blower's orientation via the assembly, and tightened to maintain the blower's orientation as

adjusted via the assembly. Appx331-332 (10:16-21, 11:64-67); Appx317 (Fig. 22, shown below). The specification does not disclose that the clamp element in anyway limits how the blower itself can rotate with respect to the duct element, separate from the assembly. *See generally* Appx296-333.




FIG. 22

Appx317 (annotated).

Dometic misreads claim 22's clamp element as precluding the blower from "being rotatable about [a] first axis" separate from the assembly, and argues that independent claim 18 is narrower than dependent claim 22. Appx333 (cls. 18, 22); Br. at 65-67. However, claim 22's "clamp element" pertains to claim 18's "assembly for adjusting the blower" such that only the loosening of the clamp, as opposed to other means, is necessary to allow the assembly to change the blower's

orientation about the second axis. Appx333 (cls. 18, 22); Appx52-53. The clamp element does not limit the blower from "being rotatable about [a] first axis." Appx333 (cls. 18, 22); Appx52-53.

Indeed, the transitional term "includes" in claim 22 is open-ended and does not exclude additional, unrecited modes of rotation, including the blower from "being rotatable about [a] first axis" separate from the assembly. *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004).

Under the proper reading, claim 22 is narrower than claim 18 because claim 22's clamp element limits how the assembly adjusts the blower about the second axis, and not the blower from "being rotatable about [a] first axis." Appx333 (cls. 18, 22). Therefore, the Commission's construction does not violate the doctrine of claim differentiation.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that its determination be affirmed.

Respectfully Submitted,

*/s/ Namo Kim*
DOMINIC L. BIANCHI
General Counsel

Amanda P. Fisherow
Assistant General Counsel

Namo Kim
Attorney-Advisor
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3459
Namo.Kim@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Date: February 7, 2025

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit Rule 32(b)(3), I hereby certify that the attached brief complies with the type-volume limitation and typeface requirements of Federal Rule of Appellate Procedure 32(a)(7) and Federal Circuit Rules 32(b)(1) and 32(b)(2). The brief has been prepared in a proportionally-spaced typeface using Microsoft Office 365, in Times New Roman 14-point font. The brief contains a total of **13,905** words, obtained from the word-count function of the word-processing system, including all footnotes and annotations, combined with a manual count of words appearing in figures and images.

*/s/ Namo Kim*
Namo Kim
Attorney-Advisor
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3459
namo.kim@usitc.gov

*Counsel for Appellee*
*U.S. International Trade Commission*

Date: February 7, 2025