Appeal No. 2024-1796

# United States Court of Appeals for the Federal Circuit

**DOMETIC CORPORATION, DOMETIC SWEDEN AB,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**CITIMARINE L.L.C., MABRU POWER SYTEMS, INC., SHANGHAI HOPEWELL INDUSTRIAL CO., LTD., SHANGHAI HEHE INDUSTRIAL CO., LTD.,**
*Intervenors*

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1346.

## APPELLANTS' REPLY BRIEF

Stephen R. Howe
steve.howe@huschblackwell.com
HUSCH BLACKWELL LLP
511 N. Broadway, Suite 1100
Milwaukee, WI 53202
414-273-2100 Telephone
414-223-5000 Facsimile

Kara R. Fussner
kara.fussner@huschblackwell.com
Beau Jackson
beau.jackson@huschblackwell.com
Matthew M. Kamps
matt.kamps@huschblackwell.com
Avery Hitchcock
avery.hitchcock@huschblackwell.com

*Counsel for Appellants Dometic Corporation and Dometic Sweden AB*

February 28, 2025

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1796

**Short Case Caption** Dometic Corp. v. ITC

**Filing Party/Entity** Appellants Dometic Corporation, Dometic Sweden AB

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/28/2025

Signature: /s/ Stephen R. Howe

Name: Stephen R. Howe

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Dometic Corp. | | Dometic Sweden AB<br>Dometic Group AB (publ) |
| Dometic Sweden AB | | Dometic Group AB (publ) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Bernardo Zito Porto<br>HUSCH BLACKWELL LLP | Andrea Shoffstall<br>formerly of HUSCH BLACKWELL LLP | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST .......... I

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. THE COMMISSION ERRED IN FINDING THE VECTOR COMPACT ANTICIPATES CLAIMS 1, 2, 4, 5, AND 7 .......... 3

A. The Vector Compact Lacks a Guiding Cover .......... 5

B. The Commission's Argument That the ALJ Applied Dometic's Construction Lacks Support and is Incorrect .......... 11

C. Dometic Did Not Forfeit the Argument That the ALJ Failed to Adopt Dometic's Construction .......... 13

D. Dometic's Proposed Construction is Legally Different From What the ALJ Applied .......... 14

E. Factual Questions Preclude Summary Determination Against Dometic .......... 15

F. The Prosecution History Supports Dometic's Construction .......... 16

G. Respondents' Additional Arguments Are Untimely and Incorrect .......... 17

II. THE COMMISSION ERRONEOUSLY CONSTRUED CLAIMS 18-22 TO REQUIRE "TWO MODES OF ROTATION," AND INCORRECTLY FOUND NONINFRINGEMENT AND LACK OF TECHNICAL DOMESTIC INDUSTRY .......... 18

A. The Intrinsic Evidence Does Not Support the Commission's and Respondents' Arguments or the Commission's Construction .......... 19

1. The Claim Language .......... 19

2. The Specification ......................................................................20

3. The Prosecution History ..............................................................26

4. The Extrinsic Evidence ...............................................................28

5. Appellees' Remaining Arguments Fail.......................................29

III. RESPONDENTS' ARGUMENT REGARDING THE "CYLINDRICAL DUCT ELEMENT" FAILS..............................................29

CONCLUSION..............................................................................................30

CERTIFICATE OF COMPLIANCE.............................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Hospira, Inc.*,
944 F.3d 1327 (Fed. Cir. 2019) .......... 29

*Chamberlain Group, Inc. v. Int'l Trade Comm'n*,
No. 2020-1965, 2023 WL 3115579 (Fed. Cir. 2023) .......... 30

*E-Pass Techs., Inc. v. 3Com Corp.*,
343 F.3d 1364 (Fed. Cir. 2003) .......... 28

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) .......... 14, 17

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) .......... 6, 25, 26

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005) .......... 14

*Hill-Rom Co. v. Kinetic Concepts, Inc.*,
209 F.3d 1337 (Fed. Cir. 2000) .......... 7

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
540 F.3d 1337 (Fed. Cir. 2008) .......... 28

*Intervet Inc. v. Merial Ltd.*,
617 F.3d 1282 (Fed. Cir. 2010) .......... 23

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999) .......... 24

*Kara Tech. Inc. v. Stamps.com Inc.*,
582 F.3d 1341 (Fed. Cir. 2009) .......... 21

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) .......... 19

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) .......... 28

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (Fed. Cir. 2022)........................................................................ 30

*Quectel Wireless Solutions Co. Ltd. v. Koninklijke Philips N.V.*,
No. 2023-1155, 2024 WL 2064617 (Fed. Cir. 2024) ....................................... 6, 7

*Semcon Tech, LLC v. Micron Tech., Inc.*,
660 F. App'x 908 (Fed. Cir. 2016) .................................................................... 16

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
820 F.3d 419 (Fed. Cir. 2016)................................................................... 14, 15

*Sorensen v. Int'l Trade Comm'n*,
427 F.3d 1375 (Fed. Cir. 2005)........................................................................ 27

*Wireless Agents LLC v. Sony Ericsson Mobile Communications AB*,
189 F. App'x 965 (Fed. Cir. 2006) ...................................................................... 7

**Statutes**

35 U.S.C. § 112 .................................................................................................. 7

**Regulations**

37 C.F.R. § 1.72 ................................................................................................. 6

37 C.F.R. § 1.73 .................................................................................................7

# INTRODUCTION

Dometic appeals two erroneous and contradictory decisions from the Commission, in which the Commission construed one set of claims (1, 2, 4, 5, and 7) broadly to find invalidity, and another set of claims (18-22) narrowly to find non-infringement. The Commission took two diametrically opposed approaches there—ignoring inventor testimony and clear specification statements to take an ***expansive view*** of the term "guiding cover," while relying almost exclusively on that same inventor's out-of-context statements and specific, non-exhaustive embodiments to take a ***narrow view*** of the axis limitations. This approach, which is inconsistent with the presumption of validity afforded to issued patents, cannot stand. Reversal of these improper decisions would necessarily result in a violation of Section 337[1], and thus the rightful protection of a genuine American company that manufactures the patented products domestically, and which is being harmed by competitors (two of whom are its former distributors) intent on infringing its hard-earned intellectual property through foreign copycat imports.

For the "guiding cover" limitation, the ALJ's entire analysis consisted of mere ten pages of discussion, the bulk of which was directed to an issue the

---

[1] Based on the ALJ's Final Initial Determination, there is no dispute that each Respondent practices at least one of claims 18-22, the validity of which would not be impacted by reversal of the ALJ's improper construction of the "rotation" limitation. *See* Appx27713-27715, Appx27720; Appx85-186.

Commission and Respondents have decided not to address on appeal.[2] There, the ALJ improperly found a "guiding cover" in Dometic's old Vector Compact unit by piecing together disparate parts of the device, and ignoring not only crucial claim limitations but also the nuances of Dometic's construction, as well as inventor testimony. The Commission and Respondents argue, incorrectly, that the ALJ adopted Dometic's construction and regardless, that Dometic allegedly forfeited argument to the contrary. Even a cursory skim of Dometic's prior briefing demonstrates these statements to be incorrect, as Dometic clearly showed throughout this matter and the ITC investigation that the ALJ ***did not*** adopt Dometic's proposed construction, which required (per the claims and specification) that the "guiding cover" be part of the assembly, not the main body. The Commission and Respondents further argue the "guiding cover" need not be part of a separate assembly, and instead is part of the main body itself, based on a quote from the Abstract of the patent, while ignoring the claims themselves as well as express statements from the specification, explaining these are separate structures. *See*, *e.g.*, Appx327 (1:35-40) (the invention "includes a main body, a blower and

[2] There, the ALJ analyzed whether the "guiding cover" could be a mere cylindrical protrusion, as opposed to something more. Dometic explained in its Petition for Commission Review, and in its Principal Appeal Brief, why the ALJ's analysis and construction in that regard was incorrect. Appx223-232. The Commission and ALJ did not address this issue in their briefing, and have thus waived any argument that a mere cylindrical protrusion can constitute a "guiding cover." *See* ITC Br., Resp. Br., *generally*.

an assembly”).

Regarding the axis and directional limitations recited in claims 18-22, neither the intrinsic nor extrinsic evidence support the Commission’s construction, and the arguments set forth in the Commission’s and Respondents’ respective briefs fail. Put simply, the Commission’s and Respondents’ arguments confirm the Commission’s construction is predicated on numerous errors of law, including importing unrecited language/embodiments into the claims, failing to consider the disputed terms in view of the surrounding claim language, and misinterpreting and distorting the intrinsic and extrinsic evidence. The result: an overly narrow construction that ***requires***, as opposed to ***permits***, “two modes of rotation” accomplished by separate, unidentified structures. But claims 18-22 do not recite such restrictive language, nor does the balance of the intrinsic evidence. Dometic is entitled to the full and proper scope of claims 18-22 as a matter of law, which the Commission’s construction does not provide.

## ARGUMENT

### I. THE COMMISSION ERRED IN FINDING THE VECTOR COMPACT ANTICIPATES CLAIMS 1, 2, 4, 5, AND 7

As explained in Dometic’s Principal Brief, although the ALJ stated it was rendering its decision under both proposed constructions of the term “guiding cover,” it, in fact, did not. Instead, it grossly altered Dometic’s proposed construction, finding disclosure in the Vector Compact only by piecing together

disparate parts of the device, and ignoring not only crucial claim limitations but also the nuances of Dometic's construction. In particular, Dometic's construction of the term "guiding cover" recognized the nature of that feature as a "cover-like element," which was itself part of the assembly, not the body. Dometic's Principal Brief ("Op. Br."), 32. In contrast, the ALJ's construction focused solely on the alleged existence of three arbitrary portions of that construction, to the exclusion of their relative positioning on the device or status as a cover-like element, as depicted below.

| **"Guiding Cover"** | |
|---|---|
| **Dometic's Proposed Construction** | **ALJ's Construction** |
| "a 'fan plate' that is a 'cover-like element' that includes a flat section with a circular opening for directing air to the adjacent blower and has a cylindrical section extending from the opening."<br><br>Appx202; Appx9682-9683. | "a combination of a flat section, circular opening, and cylindrical protrusion"<br><br>Appx230. |

Dometic further explained any construction must be applied in conjunction with the rest of the claim limitations, including the requirement that the guiding cover be part of the assembly, not the main body. Op. Br., 32. Appellees[3] challenge this, arguing: (1) a guiding cover can be found anywhere on the device and need not be

[3] Dometic references the Commission and Respondents (Intervenors) collectively as "Appellees".

distinct from the main body; (2) the ALJ adopted Dometic's construction; (3) Dometic forfeited argument to the contrary; and (4) there is no legal distinction between Dometic's construction and how the ALJ construed the term. Commission's Brief ("ITC Br."), 24-26; Respondents' Brief ("Resp. Br."), 31-40. They are incorrect on all four counts.

### A. The Vector Compact Lacks a Guiding Cover

The Commission[4] argues the Vector Compact discloses a guiding cover, even under Dometic's construction of the term. ITC Br., 26-32. This argument is based on not only a misunderstanding of Dometic's proposed construction, but the fact that both the Commission and ALJ turned a blind eye to the actual disclosure of the specification and claim terms relating thereto. Specifically, according to the Commission, "nothing in the claim language or the specification requires the main body and the assembly to be mutually exclusive" (ITC Br., 28), and therefore there was "nothing inconsistent about identifying most of the shroud as part of the main body and simultaneously identifying the flat section/circular opening/cylindrical protrusion part of the shroud as the guiding cover." ITC Br., 32. The Commission is incorrect.

[4] Respondents' (Intervenors') Brief largely parrots the arguments presented in the Commission's Brief. To the extent Dometic addresses overlapping arguments with respect to the Commission, those arguments are directed to Respondents' Brief as well.

The ’351 Patent is replete with material demonstrating the guiding cover is separate from the main body, and that the shroud cannot constitute a guiding cover (nor can any portion of it). For example, every independent claim in the Patent refers to the invention as including “a main body; and a blower … and an assembly.” Appx332-333 (claims 1, 17, 23). And nothing in the claims provides any indication to the contrary. Since the claims define the “guiding cover” as part of the “assembly” (Appx332-333), there is thus a presumption the main body and guiding cover are separate, and that “guiding cover” cannot be construed to refer to a portion of the main body itself. *See*, *e.g.*, *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024).

The specification supports such a construction as well. For example, the Summary of the Invention defines the assembly, of which the guiding cover is part, as separate from the main body, stating the invention “includes a main body, a blower and an assembly.” Appx327 (1:35-37). And Respondents have previously described the feature on the Vector Compact allegedly containing a guiding cover (the shroud), as the “main body.” Appx42959-42960.

Nothing in the Commission’s nor Interventors’ briefs rebuts this presumption. Although the Commission cites to the Abstract for the quote: “An air conditioning system for a nautical vehicle includes a main body including an assembly…” (ITC Br., 29; Appx296 (Abstract)), the Abstract, by necessity, is

merely a short statement intended for a reader to "determine quickly from a cursory inspection the nature and gist" of the invention, not the specifics thereof. 37 C.F.R. § 1.72. *Quectel Wireless Solutions Co. Ltd. v. Koninklijke Philips N.V.*, 2024 WL 2064617, at *3 (Fed. Cir. 2024). The written description portion of the specification, on the other hand, is required to provide a "full" description of the invention including "exact terms as to enable a person skilled in the art … to make and use the same." 35 U.S.C. § 112. Even the Summary of the Invention portion of the written description is designed to be more comprehensive and closely tied to the claims themselves than the Abstract. *See*, *e.g.*, 37 C.F.R. § 1.73 (the Summary of the Invention should "be commensurate with the invention as claimed and any object recited should be that of the invention as claimed."); *Wireless Agents LLC v. Sony Ericsson Mobile Communications AB*, 189 F. App'x 965, 967, (Fed. Cir. 2006). Thus, while at times it may be helpful to consult the Abstract in connection with claim construction, it should not be treated as a detailed description of how terms are used, particularly in a manner contrary to the written description or claims. *See*, *e.g.*, *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n.* (Fed. Cir. 2000) (explaining the Abstract is only "potentially helpful").

The Commission's remaining citations are similarly unavailing. At best, those citations stand for the proposition that the "main body" is, in certain portions of the specification, described as the drain pan and what is mounted above it, and

that the shroud is an optional accessory. ITC Br., 26-32; Appx332 (11:24-26); Appx328 (4:43-63); Appx329-330 (6:17-24, 6:35-7:19); Appx331 (9:66-10:2). But at no point does the Commission demonstrate the main body is intended to include the guiding cover itself, or that the shroud is not part of the main body. Instead, the Commission attempts to take an out-of-context statement, appearing once, and use it to vitiate the clear disclosure of the claims and remainder of the specification. Indeed, the Commission's argument suggests that because the Patent refers to the components mounted above the drain pan as the "main body," then any component above the drain pan and fastened in any way to the main body becomes part of the main body. This is incorrect. The Patent contemplates connections between the main body, blower, and assembly, while at the same time identifying those as distinct sections of the invention. For example, the Patent notes transition brackets fastened to the guiding cover to secure it to the blower. Appx332 (11:4-10). Yet, the blower is described as distinct from the assembly. The assembly does not become part of the blower merely because of the described fastenings. Also, the blower is coupled to the evaporator, which is described as part of the main body. Appx331 (9:58-60); Appx332 (11:10-23, 11:24-26). The various portions must connect, and are described as connecting, for the invention to function. This does not mean the sections are all the "main body."

The Commission's argument is itself also based on a false premise—even

the Figures cited by the Commission show that while the guiding cover is attached to the evaporator, it is not, in its entirety, directly above the drain pan. As can be seen in Figure 1, portions of the guiding cover, 170, overhang the drain pan 100. Thus, the Commission's argument (that everything above the drain pan including the guiding cover becomes part of the main body) fails to rebut the presumption that the guiding cover and main body are separate as otherwise repeatedly made clear in the claims and the specification.




FIG. 1

Appx297.

Respondents attempt to build on the Commission's argument here, contending the "specification elsewhere describes the guiding cover 170 as being above the drain pan and including 'slots 179 at the bottom that mate with projections 180 (FIG. 20) on the drain pan 100[,]' again indicating that the claimed guiding cover is part of the main body…" Resp. Br., 36. This is incorrect. First, the Patent does not state, as Respondents suggest, that the guiding cover is part of the

main body or is, in its entirety, above the drain pan—that is an inaccurate characterization. Furthermore, Respondents quote a portion of the description of one embodiment of the guiding cover, which no party contends on appeal is required. Specifically, that portion of the specification describes the guiding cover as having a "curvature" at the "intersection of the flat section 172 and the cylindrical section 176 … contributing to smoother air flow," and then notes it further includes slots to mate with the drain pan." Appx331 (10:5-12). Not only does this not alter the fact that the guiding cover is still shown as overhanging the drain pan, but the fact that neither the Commission, Respondents, nor Dometic have taken the position here that these sentences are part of the definition of a "guiding cover" highlights the improper nature of Respondents' argument.

The Commission also attempts to justify the ALJ's improper construction by arguing the ALJ allegedly determined the shroud structure of the Vector Compact and the guiding cover of the Patent "perform the same claimed requirement," and that it was therefore proper to treat them as one and the same. Appx226-232; Appx331-332. This is because, allegedly, they both perform the function of "maintaining the main body and the blower in air communication with one another." *Id*. This argument, however, underscores the glaring failure in the ALJ's analysis, as it ignores the main purpose of the guiding cover. As explained in the specification, the guiding cover, and the assembly of which is it a part, are crucial

to the patented invention because they permit the rotation of the blower relative to the main body, and in some embodiments, beyond 270 degrees. Appx327-333. The claims further demonstrate this. Appx332-333. Indeed, inventor Pabisz testified the "notion of using a guiding cover in a cylindrical duct element for maintaining the main body and the blower in air communication [was] new […] at the time of the application" and that it was different from prior art features such as those of the Vector Compact in that it permitted the claimed rotation due to the "smooth transition" it afforded. Appx7697 (182:20-184:4).

### B. The Commission's argument that the ALJ applied Dometic's construction lacks support and is incorrect

Contrary to the Commission's assertions, the ALJ did not, in fact, adopt Dometic's proposed construction. The Commission provides no explanation for its argument to the contrary, other than its mere assertion Dometic's argument used a "misquote[]" of the "ALJ's analysis which paraphrased Dometic's construction." ITC Br., 24-25. Presumably, if Dometic misquoted the ALJ, the Commission would have included the full quote. Yet that section of the Commission's brief contains no such citation or quote. The Commission's argument is simply that—argument without support.[5]

[5] The Commission's assertion that the ALJ must have adopted Dometic's construction, because, allegedly, "Dometic specifically acknowledged" "the ALJ found … that the Vector Compact had 'the cover-like element'," is incorrect. ITC

And that argument is proven incorrect by the actual text of the ALJ's decision. Specifically, the ALJ stated the "Vector Compact has a 'guiding cover,' whether that element is interpreted as the combination of a flat section, circular opening, and cylindrical protrusion, or just a cylindrical protrusion." Appx230[6]. Based on this, the ALJ concluded "[t]here is thus no claim construction dispute that presently requires resolution." Appx230. The ALJ plainly analyzed only two constructions, one in which the guiding cover is a cylindrical protrusion, and one where the guiding cover is interpreted as "the combination of a flat section, circular opening, and cylindrical protrusion." Appx230. Each of these constructions ignored whether those features were contained in an assembly separate from the main body, and which constituted a cover-like element. Appx230. This is made abundantly clear in the ALJ's later analysis, in which it found there is "nothing inconsistent about identifying most of the shroud as part of the main body and simultaneously identifying the flat section/circular opening/cylindrical protrusion part of the shroud as the guiding cover." Appx231.

---

Br., 24. Dometic never acknowledged that the ALJ actually made any such finding under Dometic's construction. Rather, Dometic noted a statement appearing in Order 19 and explained this finding was incorrect, because "[t]he ALJ acknowledged that the flat section identified as supposedly being part of what comprises the guiding cover in the Vector Compact 'is part of the larger housing (or shroud)'." Appx13858-13859. Dometic made clear this was improper, and as a result, the ALJ had failed to adopt, apply, or even analyze the correct construction of that term. Appx13872-13877.

[6] Unless otherwise noted, all emphasis added.

There, the ALJ clearly indicated it was only the flat section of the shroud that was being deemed a "guiding cover," to the exclusion of any other portion of the shroud that it may have deemed a cover-like element. In other words, the ALJ's construction explicitly ***did not*** include any cover-like element. The ALJ further made clear that it did not adopt Dometic's construction when it stated—multiple times—that what it deemed the guiding cover was part of the main body, in contrast with Dometic's proposed construction that it be part of the assembly. *See*, *e.g.*, Appx228 ("the cylindrical extension protruding from the cover over the main body…"), Appx231 (acknowledging Dometic's argument "Respondents previously identified the shroud as part of the main body rather than part of the assembly."), Appx231 (asserting the Patent identifies the shroud as part of the main body).

### C. Dometic did not forfeit the argument that the ALJ failed to adopt Dometic's construction

The Commission next asserts Dometic abandoned any argument the ALJ failed to adopt its construction. ITC Br., 24. This, too, is incorrect. In Dometic's Opposition to Respondents' Motion for Summary Determination, Dometic repeatedly explained the guiding cover is a fan plate that is a cover-like element (among other things), and that it must be part of the assembly rather than main body. Appx9683-9684. After issuance of the ALJ's decision, Dometic timely filed a Petition for Commission Review, in which it explained the ALJ's decision and Respondents' arguments "overlook key aspects of the Asserted Claims," in part, by

finding a guiding cover on the main body rather than as part of an assembly as required by the claims, specification, and Dometic's proposed construction. Appx13872-13877. Dometic clearly articulated its position there, including that the "ALJ failed to recognize that [its] determination is inconsistent with the claims themselves, which plainly identify both the blower and assembly/guiding cover as separate features from the body, rather than part of it." Appx13877. Thus, Dometic has always maintained the ALJ did not adopt and apply its proposed construction, and Dometic timely raised this issue in its Petition for Commission Review as required. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999); *see also Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005).

### D. Dometic's proposed construction is legally different from what the ALJ applied

The Commission next argues that even if the ALJ applied the "combination construction," there is no legal distinction between the two and that the issue is purely a factual question. ITC Br., 25. Not so. The ALJ and Commission each ignored relevant claim terms, and thus erred in construing the phrase "guiding cover." While the ALJ and Commission also committed factual error, it committed legal error as well, because it construed the term "guiding cover" to read out express requirements, as described in Dometic's Principal Brief. *See*, *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 425 (Fed. Cir. 2016).

### E. Factual Questions Preclude Summary Determination Against Dometic

The Commission argues there is no factual dispute because, allegedly, "Dometic does not dispute or challenge the relevant features and structure of Vector Compact." ITC Br., 32. Dometic has indeed challenged the finding that the Vector Compact has a guiding cover, however. Op. Br., 42-48. And Dometic has submitted a wealth of evidence supporting its position, including citations to the claims, specification, prior assertions of Respondents, photos of the Vector Compact, and inventor and expert testimony. Op. Br., 30-47; Appx9682-9686; Appx13859-13877; Appx327; Appx331-333; Appx7468-7474; Appx7492-7498; Appx7680; Appx7684; Appx7697; Appx7950-7952; Appx7976; Appx42959-42960; Appx27726-27730. While the ALJ may have identified what Respondents purport to be a flat section, a circular hole, and a cylindrical protrusion on the Vector Compact, Respondents and the Commission have provided ***no evidence*** the Vector Compact contains a cover-like element with those features and which is part of an assembly distinct from the main body. Op. Br., 42-48. Indeed, inventor Pabisz testified it was this arrangement that enabled the claimed rotation, and that the "notion of using a guiding cover in a cylindrical duct element" (as opposed to the metal ring of the Vector Compact) was new and enabled the claimed invention. Appx7697 (181:8-184:4). Pabisz also explained on the Vector Compact, the "mating ring" (the circular protrusion) was "mounted to the shroud," not on an

assembly. Appx7680 (114:7-10). Pabisz further distinguished between the main body/shroud and the guiding cover, explaining "guiding cover was terminology that was used for the new patent" and did not refer to "a shroud, sheet metal shroud, with a ring." Appx7684 (129:18-130:9). Although the Commission argues the ALJ considered this testimony, the ALJ must do more than simply consider it on summary determination; because of the legal presumption of validity, it must have resolved all questions of fact in Dometic's favor, which it did not do. *Semcon Tech, LLC v. Micron Tech., Inc.*, 660 F. App'x 908, 914 (Fed. Cir. 2016).

### F. The Prosecution History Supports Dometic's Construction

Appellees argue the prosecution history relating to the Dodge patent, and amendments made to overcome a rejection thereto, have no bearing on this matter because, in their view, Dodge is not identical to the Vector Compact in all respects. Resp. Br., 5-7; ITC Br., 35-36. This completely misses the crucial legal point. In Dometic's Principal Brief, Dometic explained that, in response to a rejection over Dodge—a patent that covered the Vector Compact product—Dometic amended the claims to add a detailed account ***of the components of the assembly, and to make clear that this assembly was separate from the main body and blower***. Op. Br., 38-39; Appx35201-35211, Appx35223, Appx35229-35230. This was based on the disclosure in Dodge of figures depicting a main body and a blower. *Id.* That amendment, and the examiner's allowance of the claims in response, demonstrated

the importance of the claimed assembly and its distinction from main body and blower. Whether Dodge and the Vector Compact are identical in all respects has no bearing on the issue presented here[7]—***that the claims were amended specifically to flag the assembly as its own element of the air conditioning unit, and to make clear that it is not merely a part of the main body***. *Id.*

### G. Respondents' Additional Arguments Are Untimely and Incorrect

Respondents suggest if the Court agrees with Dometic, and the main body and guiding cover are deemed separate elements, it must also construe the main body to exclude the evaporator cover to avoid reading out all preferred embodiments. Resp. Br., 37. Elsewhere, Respondents suggest that if "evaporator cover" is deemed part of the main body, Dometic's domestic industry product would not practice the Patent. Resp. Br., 34, n.4. Both arguments have been forfeited however, as Respondents failed to raise either in their summary determination briefing or in opposing Dometic's Petition. *Finnigan Corp.*, 180 F.3d at 1363. Regardless, these arguments are based on the incorrect premise that there can only be one cover. The Patent describes multiple types of covers, including at least three types of covers constituting the shroud. *See*, *e.g.*, Appx328-

---

[7] Dodge and the Vector Compact are cumulative, in all material respects, as both disclose a blower attached directly to the shroud of the main body, and neither possess a guiding cover, nor anything at all that could be considered an assembly. Appx14606-14610.

329 (4:47-56, 6:17-67). None of these are claimed, and thus may or may not be included in a given product without impacting whether that product is covered by the Patent. Appx332-333 (claims 1, 2, 4, 5, and 7). The question here is whether ***the guiding cover*** can properly be found in an arbitrary portion of the main body; and the answer, based on the claims and specification, is unambiguously ***no***.

Finally, Respondents assert Dometic failed to contend during discovery that the Vector Compact lacks a guiding cover. Resp. Br., 11-12. This is false. Dometic repeatedly asserted throughout discovery that the Vector Compact lacks an assembly, including a guiding cover. *See*, *e.g.*, Op. Br., 20, 41; Appx27726-27730; Appx7468-7474, Appx7492-7498; Appx7684 (129:11-130:9), Appx7697 (182:20-184:4); Appx7897; Appx7950-7952, Appx7976.

## II. THE COMMISSION ERRONEOUSLY CONSTRUED CLAIMS 18-22 TO REQUIRE "TWO MODES OF ROTATION," AND INCORRECTLY FOUND NONINFRINGEMENT AND LACK OF TECHNICAL DOMESTIC INDUSTRY

The "axis limitation" and "directional limitation" recited in claims 18-22 ***do not require***, and need not be satisfied by, (1) a structure identifiably distinct from the claimed assembly; or (2) a different type of rotation separate from the assembly's adjustment/rotation. Op. Br., 49-50. Neither the intrinsic evidence, purported extrinsic evidence, nor the law support or permit the Commission's construction. *Id.*, 51-56. Nevertheless, Appellees continue to treat what is undisputedly permissive and flexible claim language in an overly narrow manner

that only makes sense if one reads limitations into the claims, disregards portions of the specification, and misapprehends the intrinsic evidence—***all of which*** a proper claim construction analysis forbids.

### A. The Intrinsic Evidence Does Not Support the Commission's and Respondents' Arguments or the Commission's Construction

#### 1. The Claim Language

The intrinsic evidence does not support the Commission's construction of the axis limitation. Op. Br., 56-59. Appellees continue to argue the claim language "[t]he 'blower being rotatable'" refers to "a first type of rotation where the blower itself is capable of rotation about a 'first axis,'" and that the claim language "adjusting the blower about a second axis so as to alter the orientation of the [blower] outlet" "indicates that the blower's outlet has an initial orientation, which is oriented by 'the blower being rotatable about [a] first axis,' and this initial orientation is *altered* about the second axis by the duct element." ITC Br., 38-39 (emphasis in original); Resp. Br., 41-44. The foregoing constitutes Appellees' ***entire*** analysis of the claim language. But isolating disputed claim language without considering it in the context of the surrounding claim language, as Appellees do here, is improper. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996).

In that regard, there is no dispute claims 18-22 require (1) a blower that is "in air communication" with the main body; (2) the duct element and blower are

"coupled;" (3) the cylindrical duct element to which the blower is "coupled" "maintain the main body and the blower in air communication with one another;" and (4) the duct element is "rotatably adjustable . . . so as to alter the orientation of the [blower] outlet." Appx333 (Claim 18); Op. Br., 56-57. Appellees do not even account for, and much less explain, how the foregoing claim language surrounding the disputed terms supports their construction. Additionally, there is no dispute the first and second axes can be identical, as they were construed as such. Op. Br., 57. Furthermore, there is no dispute that claims 18-22 do not limit ***how*** the blower and duct element are coupled, much less whether the coupling is permanent/irreversible, such as by welding. Appx333 (Claim 18). Thus, a POSA would understand claims 18-22 ***include, but are not limited to,*** embodiments where the ***coupled*** blower and duct element form a unitary structure and the first and second axes are identical, and thus rotating/adjusting the duct element about the second axis necessarily rotates/adjusts the blower about the first axis, and vice versa, because they move as one. Op. Br., 58-59.

### 2. The Specification

Contrary to Appellees' arguments (ITC Br., 40-45; Resp. Br., 46-48), the specification does not require claims 18-22 to have "two modes of rotation" accomplished by different structures. Op. Br., 59. First, Appellees' argument regarding "two modes" of rotation rests on a small specification passage (i.e.,

11:64 through 12:24) and certain Figures they continue to misread and distort. Appellees' limited focus on fewer than 30 lines of specification text and a handful of Figures, to the exclusion of the remainder of the specification, highlights the legal errors that pervade the Commission's construction. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("patentee is entitled to the full scope of his claims," and legal error to limit claims to preferred embodiment or import limitations from specification into claims).

The specification passage (Appx332 (11:64-12:24)) merely describes a single embodiment of the invention where the duct element is a "non-concentric cylinder" and describes how the blower and duct element can be initially installed/connected/attached/coupled to reduce the maximum height of the air conditioner. This passage does not refer to any type of rotation or adjustment recited in claims 18-22, where the duct and blower are undisputedly coupled, in air communication, and not limited to a non-concentric cylinder. Op. Br., 57; *see also* Appx332 (12:4-24) (stating "the blower 2 and the duct element 184 are attached at a predetermined orientation relative to one another such that the maximum height of the air conditioner 1 will be kept below a certain value despite various orientations of the blower" and further explaining that blower height changes depending on how the blower and duct are installed/connected/coupled/fastened ***before*** being rotated as claimed); *see also* Op. Br., 60-61. Similarly, the claims

confirm that what Appellees characterize incorrectly as a "type of rotation…associated with restricting the maximum height" (Appx49) is not rotation at all, but refers to a way to ***install*** (i.e., couple) the blower to the duct element. Appx333 (Claim 17).[8] Op. Br., 62.

Appellees' allegation that Dometic's position is "contradicted by its admission that 'the intrinsic evidence uses ***rotation and adjustment synonymously***,'" is misplaced. ITC Br., 43-44 (emphasis in original) Resp. Br., 29, 41-46, 56. First, Appellees' position is disingenuous, as said "admission" was made in the context of Dometic rebutting the Commission's argument that "The use of two different terms [adjusting and rotating] to describe changing the orientation of the blower outlet thus reveals that there are two different modes of changing the orientation." Appx122 (italics in original); Appx30; Op. Br., 68. In other words, Dometic merely argued, correctly, that Claim 18-22's use of "rotating" and "adjusting" ***when referring to the claimed assembly and blower*** did not require separate modes of rotations or separate structures for accomplishing the same because the Patent uses those terms synonymously when referring to the assembly and blower. Op. Br., 51-56. Nowhere did Dometic argue or admit that every use of the term "adjusting" means "rotating," as that would lead to absurd

[8] Appellees' allegation this argument was waived is demonstrably false. Appx27728-27730.

results. In that vein, Appellees' position fails, as the passage it refers to at 12:21-24 clearly states, "adjusting the orientation" of the blower in the context of "the orientation ***in which blower 2 is fastened*** to the duct element." Appx333 (12:21-24). Under Appellees' flawed logic, their cited sentence would read "the maximum height of an air conditioner 1 can be restricted by [rotating] the orientation in which the blower 2 is fastened to the duct element 184." Even if Appellees' interpretation of one embodiment set forth in the specification is correct, by law the selected passage cannot be used to limit the scope of the claims solely to that embodiment, particularly in view of the claim language here. *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010) ("It is therefore important not to confuse exemplars or preferred embodiments in the specification … with limitations that define the outer boundaries of claim scope.").

Second, this position contradicts Appellees' entire characterization of the claim language, where they argued the term "adjusting" refers to a different action than "rotating" and therefore claims 18-22 require two modes of rotation. *Supra* § II(A)(1).

Turning to the Figures that Appellees selectively discuss, Figure 22 does not support the Commission's construction. First, Appellees' characterizations are conjecture and belied by the fact Figure 22 is an exploded view of a single embodiment of the invention. Appx329 (5:39-40); *see also Johnson Worldwide*

*Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 992 (Fed. Cir. 1999) ("mere inferences drawn from the description of an embodiment of the invention cannot serve to limit claim terms"). Again, the claim language is unequivocal: the ***claimed*** blower and duct element are coupled, and they are not in Figure 22. Op. Br., 64-67.

Appellees' characterization of Figures 30A-1 through 30B-2 (ITC Br., 46-48; Resp. Br., 8-10, 52-53) fails similarly. Op. Br., 53-54, 61-65. Again, the specification states explicitly that Figures 30A-1 through 30B-2 are "example embodiment[s] of the duct element." Appx329 (5:53-57). Additionally, Appellees are now (confusingly) arguing the blower's ***fan blades*** rotating about the first axis now somehow refers to the alleged "second mode of rotation." ITC Br., 46-48; Resp. Br., 9-10, 43-46. But Appellees have characterized the "second mode of rotation" only as "the ***blower's*** rotation ***around the duct element***," having nothing to do with fan blades. *Compare* ITC Br., 46 *with id*., 40. Thus, it is unclear how Appellees believe the blower fan blades bear on their analysis or how the fan blades would constitute a structure distinct from the blower/assembly that rotates the blower (not the fan blades) in relation to the duct element. At minimum, Appellees' argument misconstrues the specification and the embodiments described therein and thus fails to give the claims their proper scope. In that regard, the fan blades reside within the blower, such that in embodiments where the first and second axes are colinear (shown in annotated Figs. 30A-1, 30A-2 (Appx325)

below), and the blower is rotated by way of the duct element and vice versa, the fan blades within the blower would also necessarily move with the blower and also rotate about the first axis, confirming that only one mode of rotation, by way of the assembly, is required to satisfy the axis limitations. Op. Br., 53-54.




Appellees' argument (ITC Br., 48-50; Resp. Br., 43-44) that the claim language creates a "presumption" that there must be two separate modes of rotation accomplished via separate structures also fails. As in *Google LLC*, the intrinsic evidence rebuts any possible presumption that "first" and "second" axes indicate there ***must*** be two distinct axes or two modes of rotation and separate structures therefor, because "the specification contemplates an embodiment in which" (1) the axes can be identical; and (2) the blower and duct element can rotate as a coupled, unitary structure (such as via an inseparable weld), such that rotating/adjusting one necessarily rotates/adjusts the other about the same axis—satisfying the claims. *Google LLC*, 92 F.4th at 1058; Op. Br., 52-53. Significantly,

the ALJ and Commission agree. Op. Br., 54-56.

Appellees' argument that the specification "expressly discloses two modes of rotation" about the claimed axes fails for the same reasons set forth above (and in Dometic's Principal Brief), as this alleged description of a "second mode of rotation" is actually a passage describing how the duct and blower are initially fastened/coupled/installed together in an embodiment where the duct element is non-concentric. Op. Br., 48-50. Moreover, Appellees undermine their "presumption" argument by again asserting the blower's ***fan blade*** rotation is now somehow the "second mode" of rotation despite insisting previously that the "second mode" of rotation required rotating the blower about the ***duct element*** via some ***separate*** and unclaimed structure. *Compare* ITC Br., 48-49 *with id*., 40.

### 3. The Prosecution History

Appellee's characterization of the prosecution history falls short. Appellees argue claims 18-22 were amended during prosecution to recite "first" and "second" axes instead of "an axis" to overcome the prior art, that Dometic's proposed construction reverts the claims back to an earlier state, and thus reads out claim language. ITC Br., 50-54. Not so.

First, claims 18-22 do not ***require*** the first and second axes to be the same ***or*** different, but instead refer to same manner of rotation when viewed from two

different perspectives. Op. Br., 25-28, 53-56. Thus, the amendment from "an" axis to a "first" axis confirms claims 18-22 were not narrowed in that respect.

Second, nothing in the prosecution history indicates claims 18-22 were intended to require two distinct axes in all cases, much less two separate modes of rotation; what became Claim 18 was merely amended to include Claim 1's language describing the claimed assembly. Op. Br., 14-18, 53, 55.

Third, nothing was discussed or implied during prosecution regarding different modes of rotation accomplished via different structural components, nor was there any discussion or implication that Claim 18 was so limited. Op. Br., 14-18, 55-57. Appellees treating the prosecution history as if it included a disclaimer, when it did not, is particularly erroneous because the ***examiner*** issued the amendment. *Sorensen v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378-79 (Fed. Cir. 2005) ("it is the applicant, not the examiner, who must give up or disclaim subject matter….") (quotations omitted). Indeed, the Examiner considered the "assembly" the same in claims 1 and 18, and explained claims 1 ***and*** 18 as amended were allowable because of the claimed ***assembly***, which was not present in the art. Op. Br., 16-18, 53-56. Nowhere did the Examiner state or imply that allowability stemmed from multiple modes of rotation, separate structures for accomplishing the same, or non-colinear axes. Op. Br., 54-56.

#### 4. The Extrinsic Evidence

Appellees' reliance on Pabisz's testimony fails legally and factually. ITC Br., 55-58; Resp. Br., 48-50. This Court has held repeatedly that inventor testimony of the kind Appellees rely on here, and the manner on which it is relied, cannot be used to vary or contradict the express language of the claims and specification, which control the claim construction inquiry. *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008); *see also E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) ("Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims."). Thus, Pabisz's testimony, which was elicited while Pabisz was being asked about at a ***single figure depicting a single embodiment***, and in which he did not testify to the exact means on how the blower can rotate with respect to the duct element, fails to alter what the claims and specification repeatedly confirm—that claims 18-22 do not require two modes of rotation or distinct axes. Op. Br., 51-61, 71-72. The facts here are analogous to those in *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1334-35 (Fed. Cir. 2019), where the Court rejected a narrower claim construction allegedly supported by inventor testimony because, *inter alia* the intrinsic evidence supported a broader construction than the single embodiment the inventor testified

about.

#### 5. Appellees' Remaining Arguments Fail

For the reasons set forth in Dometic's principal brief and above, the Appellees' characterization of the dependent claims and claims terms such as "coupled" (ITC Br., 59-66; Resp. Br., 41-50) confirm Dometic's position: claims 18-22 do not require two modes of rotation in view of the claim language because the intrinsic evidence is not limited, for example, to a blower that can be partially disassembled because it is "coupled" to the duct via apertures. The coupling can be permanent, which the ALJ said can be in the form of a weld and Dr. Paulus testified similarly. Op. Br., 58. Appellees' claim differentiation arguments are also negated because they admit "adjusting" and "rotating" as recited in claims 18-22 mean the same thing.

## III. RESPONDENTS' ARGUMENT REGARDING THE "CYLINDRICAL DUCT ELEMENT" FAILS

Respondents suggest the Commission's decision regarding the technical prong of domestic industry should be affirmed for the "alternative" reason that, allegedly, the Commission erred in finding Dometic's products contain a cylindrical duct element. Resp. Br., 57-58. Respondents' argument is based solely on alleged dictionary definitions of the term "cylinder," while ignoring intrinsic evidence demonstrating a "conical cylinder" is within the class of objects referred to as a cylinder. *Id.*; Appx331 (10:23-27). Such an approach is legally misplaced.

*Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1362 (Fed. Cir. 2022). Based on Respondents' own arguments, Dometic's products are exactly that—conical cylinders. Resp. Br., 57 (asserting the domestic industry products contain "asymmetric cones").

Moreover, Respondents' assertion that this issue is governed by the less stringent *de novo* standard is incorrect. Respondents attempted to advance their "dictionary definition" view of the plain and ordinary meaning of "cylinder" in their pre-hearing brief, arguing that under such a view, Dometic's products lacked a cylindrical duct element. Appx25814-25815. The ALJ struck these arguments as untimely, noting the arguments "should have been disclosed during discovery, but were not." Appx25815. To the extent Respondents attempt to raise the issue now, they must first demonstrate the ALJ's evidentiary ruling constituted an abuse of discretion, which is a significantly higher burden. *Chamberlain Group, Inc. v. Int'l Trade Comm'n*, 2023 WL 3115579, at *4 (Fed. Cir. 2023).

## CONCLUSION

The Commission took two diametrically opposed approaches to claim construction in this case, construing claims 1-7 broadly to find invalidity, and claims 18-22 narrowly to find non-infringement. These decisions are replete with legal and factual error, and at least one of them (if not both) must be reversed.

Dated: February 28, 2025

Respectfully submitted,

*/s/ Stephen R. Howe*

Stephen R. Howe
steve.howe@huschblackwell.com
Avery Hitchcock
avery.hitchcock@huschblackwell.com
HUSCH BLACKWELL LLP
511 N. Broadway, Suite 1100
Milwaukee, WI 53202
414-273-2100 Telephone
414-223-5000 Facsimile

Kara R. Fussner
kara.fussner@huschblackwell.com
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
314-480-1500 Telephone
314-480-1505 Facsimile

Matthew M. Kamps
matt.kamps@huschblackwell.com
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
312-655-1500 Telephone
312-655-1501 Facsimile

Beau Jackson
beau.jackson@huschblackwell.com
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
816-983-8000 Telephone
816-983-8080 Facsimile

*Counsel for Appellants Dometic Corporation and Dometic Sweden AB*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1796

**Short Case Caption:** Dometic Corp. v. ITC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,966 words.
- ☐ the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- ☐ the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 02/28/2025

Signature: /s/ Stephen R. Howe

Name: Stephen R. Howe

Save for Filing